BERT W. OESTREICHER IN HER CAPACITY AS TRUSTEE FOR RACHEL W. OESTREICHER (NOW RACHEL O. HASPEL) AND DAVE OESTREICHER II v. AMERICAN NATIONAL STORES, INC. A/K/A NATIONAL MANUFACTURE & STORES COMPANY, D/B/A JOHNSTON'S L & S FURNITURE COMPANY

No. 34

(Filed 17 June 1976)

1. **Appeal and Error § 6; Rules of Civil Procedure § 54— interlocutory order — all claims not adjudicated — substantial right — right of appeal — effect of Rule 54 (b)**

    The General Assembly did not intend to restrict the right of an immediate appeal from a judicial order affecting a "substantial right"

Oestreicher v. Stores

provided by G.S. 1-277 and G.S. 7A-27(d) by engrafting thereon the Rule 54(b) requirement that the trial judge make a finding that there "is no just reason for delay" in order for a party to appeal from an order adjudicating fewer than all the rights and claims of all the parties since Rule 54(b) is expressly inapplicable where an appeal is provided by "other statutes."

2. **Appeal and Error § 6— claims for compensatory and punitive damages and anticipatory breach — summary judgment on claims for punitive damages and anticipatory breach — right to appeal**

In an action to recover compensatory damages for breach of a lease agreement, punitive damages, and damages for anticipatory breach of the lease, plaintiff had the right to an immediate appeal from an order granting summary judgment for defendant on the claims for punitive damages and anticipatory breach since the order affected a "substantial right" of plaintiff to have all three claims tried at the same time by the same judge and jury if the claims were not subject to summary judgment.

3. **Damages § 11— breach of contract — fraud and deceit — punitive damages — sufficiency of complaint**

Plaintiff's complaint was sufficient to state a claim for relief for punitive damages based upon fraud and deceit by defendant in the breach of a lease agreement by intentionally understating its net sales over a continuing period of time so that plaintiff was deprived of rent in excess of $10,000 to which she was entitled under the terms of the lease.

4. **Contracts § 21; Landlord and Tenant § 6— covenant of peaceful occupancy — rent as percentage of sales — no requirement of occupancy — lessee's vacation of premises not anticipatory breach**

A lessee was not required to occupy the premises during the term of the lease by a provision in the lease that the lessor guarantees to the lessee peaceful and uninterrupted possession of the premises "so long as it occupies, complies with, and performs the covenants and conditions of the lease"; nor was a covenant of use or occupancy implied because the lease obligated the lessee to pay as rent a percentage of net sales over a certain amount in addition to a guaranteed minimum sum where use of the premises was not restricted to a high sales business that would activate the percentage rent provision, and the lessee had the right to transfer, assign or sublet to any business not competitive with the lessor's business. Since there was no express or implied covenant requiring the lessee to occupy the premises, the allegation that he vacated the premises prior to the expiration of the lease did not state a proper cause of action for anticipatory breach of contract.

5. **Attachment § 7— reduction of attachment bond — power of court**

Upon rendition of summary judgment for defendant as to claims for punitive damages and anticipatory breach of contract, with only a claim for breach of contract remaining, the trial judge had the right to exercise his discretionary power to reduce the bond substituted for attached property and thus keep the bond basically in proportion to the remainder of the case. G.S. 1-440.37.

6. **Attachment § 7— reduction of attachment bond — absence of request for findings — presumption**

Where plaintiff failed to request findings of fact to justify the modification of defendant's bond substituted for attached property, it is presumed that the trial judge found facts sufficient to support his order reducing the bond.

Justices LAKE, HUSKINS and EXUM concur in the result.

Chief Justice SHARP concurring and dissenting.

Justices BRANCH and MOORE join in the concurring and dissenting opinion.

ON petition for discretionary review of the decision of the Court of Appeals, 27 N.C. App. 330, 219 S.E. 2d 303, (opinion by Parker, J., concurred in by Morris, J., and Martin, J.) dismissing the appeal by plaintiff from summary judgment for defendant granted by *Seay, J.,* at the 24 March 1975 Session, ROWAN County Superior Court.

Plaintiff is the trustee of a trust which owns a building in Salisbury, North Carolina. On 1 July 1961, plaintiff, lessor, entered into a lease with L & S Furniture Company, lessee, for the premises for a period of ten years, with lessee having the option to renew the lease for an additional five years. Lessee agreed to pay a minimum rental plus five percent (5%) of the net sales above a stated amount.

On 17 June 1970, the lease was amended to recognize the defendant as the successor in interest to the former lessee and to renew the original lease upon essentially the same conditions for a five-year term ending 30 June 1976.

On 22 July 1974, defendant wrote to plaintiff advising that defendant would cease its Salisbury operations on or about 15 October 1974.

On 30 July 1974, plaintiff commenced action and applied for an order of attachment, posting bond for $80,000. On the same date, defendant's property was attached, and defendant filed an undertaking in the amount of $80,000, enabling it to retain the property.

Plaintiff filed a complaint alleging three causes of action: (1) Breach of contract, (2) punitive damages based on the continuing fraud involved in the breach of contract, (3) anticipatory breach of contract.

Defendant's motion for summary judgment was allowed regarding plaintiff's claims for relief for punitive damages and for anticipatory breach of contract, but overruled as to the first cause of action for breach of contract. Without giving a reason, the trial judge reduced defendant's bond to $15,000.

In connection with the motion for summary judgment, plaintiff filed a number of affidavits indicating that defendant had conducted a "going out of business sale"; that defendant was insolvent and would be going into bankruptcy; that defendant understated his total sales for previous years and, thus, underpaid the portion of his rent based upon a percentage of such sales; that defendant vacated the building; that there was a petition for involuntary bankruptcy filed against defendant, which was later withdrawn by agreement of the major creditors; and that the fair market value of the leasehold was nothing.

Other necessary facts will be related in the opinion.

*Carlton, Rhodes & Thurston by Richard F. Thurston for plaintiff appellant.*

*Coughenour and Linn by Stahle Linn for defendant appellee.*

COPELAND, Justice.

Did the Court of Appeals err in dismissing plaintiff's appeal because it was not a final judgment?

To properly evaluate this question, we must determine the true meaning of General Statutes 1A-1, Rule 54(b) which reads as follows:

"(b) *Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties *only if there is no just reason for delay and it is so determined in the judgment.* Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. In the absence of entry of such a final judgment, any order or other form of decision, how-

ever designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and shall not then be subject to review either by appeal or otherwise *except as expressly provided by these rules or other statutes.* Similarly, in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

Since the federal courts have had a similar type rule since 1931 and as amended in 1946 and 1961, we should examine their rule. 6 Moore's Federal Practice §§ 54.01[5], 54.01[6.-4] (2d ed. 1976).

The comparable federal rule is as follows:

"(b) Judgment upon multiple claims or involving multiple parties.

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is not just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.) Rules of Civil Procedure for the United States District Courts, 28, App. U.S.C. Rule 54(b) (1970).

The history of the rule leads us to England. In *Metcalfe's Case,* 11 Coke 38, 77 Eng. Rep., 1193 (1615), it was held that the general rule would not permit a judgment to be appealed that had not completely disposed of the action. Our federal courts relied on the reasoning of this case for many years.

6 Moore's Federal Practice, *supra,* § 54.19. But *Metcalfe's Case* has continuing validity in the federal courts only insofar as "complete finality is warranted." 6 Moore's Federal Practice, *supra* at § 54.19, at 212.

At common law there was no appeal of right from the decision of any court, and the only way a decision could be reviewed was by a "writ of error or writ of false judgment." G.S. 1-277, Annot. 307 (1969). Prior to 1868 starting with the enactment in December, 1777 of Chapter 2 of the Laws of North Carolina §§ 1, 2, 4, 7, 82-89, decisions in North Carolina were generally reviewed by "writ of error," by "praying an appeal," or by "certiorari." In 1868 the legislature enacted the Code of Civil Procedure, which made a notable change. Writs of error were abolished, and appeals were no longer *prayed for* (and *allowed*) but *were taken.* Code of Civil Procedure, §§ 296, 299 (1868). Under the new Code of Civil Procedure, a judge had nothing to do with granting an appeal, for it was the act of the appealing party alone. *Campbell v. Allison,* 63 N.C. 568 (1869).

It was with this background that the North Carolina General Assembly adopted Rule 54(b) in 1967. It will be observed that our Rule 54(b) has one notable exception that is not included in the Federal Rule. The applicability of our Rule is limited by the language "except as expressly provided by these rules or other statutes." Except for this specific exception, the language of our Rule would not permit an appeal if fewer than all the claims are determined unless it is provided in the judgment that there "is no just reason for delay." *Arnold v. Howard,* 24 N.C. App. 255, 210 S.E. 2d 492 (1974).

Because the Rule 54(b) limitation on appealability is not applicable where other statutes expressly provide otherwise, we consider G.S. 1-277, which provides as follows:

"(a) An appeal may be taken from every judicial order or determination of a judge of a superior court, upon or involving a matter of law or legal inference, whether made in or out of term, which affects a *substantial right* claimed in any action or proceeding; or which in effect determines the action, and prevents a judgment from which an appeal might be taken; or discontinues the action, or grants or refuses a new trial.

"(b)  Any  interested  party  shall  have  the  right  of immediate  appeal  from  an  adverse  ruling  as  to  the  jurisdiction  of  the  court  over  the  person  or  property  of  the  defendant  or  such  party  may  preserve  his  exception  for determination  upon  any  subsequent  appeal  in  the  cause." (Emphasis  added.)

When  the  North  Carolina  General  Assembly  enacted  the new  Rules  of  Civil  Procedure  in  1967,  it  did  not  repeal  General Statutes  1-277.  In  fact,  it  left  the  old  statute  intact  as  to  subsection  (a)  and  merely  added  subsection  (b).  Chapter  954 § 3  (j),  1967  Session  Laws.

Our  Court  has  consistently  interpreted  G.S.  1-277  so  as  to give  any  party  to  a  lawsuit  a  right  to  an  immediate  appeal from  every  judicial  determination  which  affects  a  *substantial right*  of  that  party,  or  which  constitutes  a  *final  adjudication,* even  when  that  determination  disposes  of  only  a  part  of  the lawsuit.

In  *Highway  Commission  v.  Nuckles,*  271  N.C.  1,  155  S.E. 2d  772  (1967),  the  Highway  Commission  sought  to  condemn property  of  defendants.  There  were  two  issues  presented  to  the trial  court:  (1)  What  land  was  plaintiff  taking  in  the  action? and  (2)  What  was  the  just  compensation  for  the  property taken?  The  trial  court  considered  these  questions  separately and  made  a  determination  on  the  first  issue  adverse  to  plaintiff.  Plaintiff  duly  excepted  to  the  court's  findings  in  this  regard  but  did  not  immediately  appeal.  Rather,  it  continued  to pursue  the  matter  in  superior  court,  and  eventually  the  issue  of damages  was  determined.  Defendant  excepted  to  the  award  of damages  and  appealed.  At  that  time,  plaintiff  attempted  to appeal  the  prior  determination  of  the  first  issue.

Our  Court,  in  an  opinion  by  Justice  Sharp  (now  Chief Justice),  dismissed  plaintiff's  purported  appeal  because  of  its failure  to  perfect  the  appeal  within  the  time  required  by  the rules.  However,  in  so  doing,  this  Court  set  forth  very  clearly the  meaning  and  application  of  G.S.  1-277  as  follows:

"Appeals  in  civil  actions  are  governed  by  G.S.  1-277, which  permits  an  appeal  from  every  judicial  order  involving  a  matter  of  law  which  affects  a  substantial  right.  Ordinarily,  an  appeal  lies  only  from  a  final  judgment,  but  an interlocutory  order  which  will  *work  injury  if  not  corrected before  final  judgment*  is  appealable.  [Citation  omitted.]

'[A] decision which disposes not of the whole but merely of a separate and distinct branch of the subject matter in litigation' is final in nature and is immediately appealable. 4 Am. Jur. 2d, Appeal and Error, § 53 (1962)." (Emphasis added.) *Highway Commission v. Nuckles, supra* at 13.

In an opinion by Justice Huskins, our Court spoke on this general proposition in *Stanback v. Stanback*, 287 N.C. 448, 453, 215 S.E. 2d 30, 34 (1975):

"Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment. [Citations omitted.]"

In our examination of "other statutes" affecting Rule 54(b), we also note General Statutes 7A-27(d), which provides as follows:

"(d) From any interlocutory order or judgment of a superior court or district court in a civil action or proceeding which (1) Affects a substantial right, or (2) In effect determines the action and prevents a judgment from which appeal might be taken, or (3) Discontinues the action, or (4) Grants or refuses a new trial, appeal lies of right directly to the Court of Appeals."

This statute, which is included in Chapter 7A, entitled "Judicial Department," was passed in 1967 by the same General Assembly that enacted Rule 54(b).

[1]  In our case the judgment of Judge Seay did not have the effect of terminating the entire lawsuit and, thus, did not purport to adjudicate all the rights and claims of all the parties to the lawsuit. General Statutes 1-277 and 7A-27(d) seem to give a right of appeal if a "substantial right" is affected. But in order for these statutes to be applicable to our case, we must assume that the General Assembly in 1967 intended something by the use of the words "or other statutes" as set out in Rule 54(b). It seems obvious they intended these words to mean something because these words were not included in the Federal Rule. Certainly the General Assembly did not intend to restrict the right of appeal provided by G.S. 1-277 and 7A-27(d) by engrafting Rule 54(b) requirements upon them.

It seems to us, that the General Assembly in Rule 54(b) used the words "as expressly provided by these rules or *other statutes*" in order to avoid any conflict between Rule 54(b) and G.S. 1-277(a) and 7A-27(d). As a matter of fact, G.S. 1-277(a) has been a part of our law without amendment since 1868, and we assume the General Assembly did not intend to "sweep it under the rug."

Historically, our Court of Appeals has dismissed all appeals where fewer than all of the claims or fewer than all the parties were determined unless the trial court in its judgment provided "there is no just reason for delay." *Arnold v. Howard, supra.* Numerous cases have followed with the same result. The net effect of these decisions is that no interlocutory order or judgment in a multiple party or multiple claim situation is appealable unless the trial judge *expressly* determines in the judgment itself that there is "no just reason for delay." Thus, this requirement has left it to the trial judge, in effect, to certify that the judgment is a final judgment and subject to immediate appeal as per the express language of Rule 54(b). The Court of Appeals has interpreted Rule 54(b) to modify G.S. 1-277 and G.S. 7A-27(d), by engrafting upon the well recognized requirements of a "party aggrieved" who has been deprived of a "substantial right," the additional requirement of an "express finding" by the trial judge in the judgment that there is "no just reason for delay." We believe this interpretation is wrong.

In the first case on this subject decided by the Court of Appeals, *Arnold v. Howard, supra,* plaintiff filed a civil action against the Howards, original defendants, to recover the balance allegedly due on a promissory note. The Howards, in turn, filed answer and also filed a third party complaint against Clardy seeking indemnity. After pleadings were filed, the third-party defendant moved for summary judgment on the third-party complaint. This motion was granted, and the original defendants objected and excepted to the order and gave notice of appeal. The Court of Appeals dismissed the appeal on its own motion. In so doing, the Court of Appeals relied heavily on the interpretation by the federal courts of Rule 54(b):

> "Although the parties have raised no question concerning the matter, we note that the judgment from which the original defendants now purport to appeal adjudicates 'the rights and liabilities of fewer than all the parties' and

that it contains no determination that 'there is no just reason for delay.' Our Rule 54(b) is substantially similar to the Federal Rule 54(b) as that Rule was amended in 1961, and it is therefore appropriate to look to Federal decisions and authorities for guidance in applying our Rule. As those authorities point out, the need for Rule 54(b) arose from the increased opportunity for liberal joinder of claims and parties which the new Rules of Civil Procedure provided. [Citations omitted.] As described by the United States Supreme Court, under Rule 54(b), the trial court 'is used as a "dispatcher." It is permitted to determine, in the first instance, the appropriate *time when each "final decision"* upon "one or more but less than all" of the claims in a multiple claims action is ready for appeal.' *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 100 L.Ed. 1297, 1306, 76 S.Ct. 895, 899 (1956). Under the Federal Rule 54(b) as amended in 1961 and under the North Carolina Rule 54(b), the trial court performs that function also in multiple-party actions as well as in multiple-claim actions. Under the North Carolina Rule, the trial court is granted the discretionary power to enter a final judgment as to one or more but fewer than all of the claims or parties, 'only if there is no just reason for delay and *it is so determined in the judgment.*' (Emphasis added.) By making the express determination in the judgment that there is 'no just reason for delay,' the trial judge in effect certifies that the judgment is a final judgment and subject to immediate appeal. In the absence of such an express determination in the judgment, Rule 54(b) makes 'any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties,' interlocutory and not final. By express provision of the Rule, such an order remains 'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties,' and such an order is not then 'subject to review either by appeal or otherwise except as expressly provided by these rules or other statutes.' G.S. 1-277 is not such an express authorization. *See* Comment to G.S. 1A-1, Rule 54(b)." *Arnold v. Howard, supra* at 258-59, 210 S.E. 2d at 493-94.

We believe the Court of Appeals fell into error because of the significant difference in the North Carolina and Federal

Rules. There is no exception in Federal Rule 54(b) for a right to appeal under "other statutes."

In addition, we believe the Court of Appeals in *Arnold* misconstrued the relationship between Federal Rule 54(b) and the appellate jurisdiction of the federal courts. The Federal Rule does not affect the jurisdiction of appellate courts; it merely expedites the issuance of *final* judgments by the district courts. In the absence of a statutory or judicially recognized exception, the federal appellate courts, as before the enactment of the Federal Rules, have jurisdiction, when and only when the trial court has made a final decision. *See* Wright and Miller, Federal Practice and Procedure: Civil §§ 2653, 2658 (1973).

As a matter of fact, in *Sears, Roebuck & Co. v. Mackey, supra,* 351 U.S. at 435, 437-38, 100 L.Ed. at 1306-07, 76 S.Ct. at 899-901, upon which the Court of Appeals relied in *Arnold,* the United States Supreme Court stated:

> "[Rule 54(b)] does not relax the finality required of each decision, as an individual claim, to render it appealable, but it does provide a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on *all* the claims in the case . . . .
>
> \*     \*     \*
>
> "The District Court *cannot,* in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291. But the District Court *may,* by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions . . . .
>
> \*     \*     \*
>
> "Rule 54(b), in its amended form . . . does not supersede any statute controlling appellate jurisdiction. It scrupulously recognizes the statutory requirement of a 'final decision' under § 1291 as a basic requirement for an appeal to the Court of Appeals. It merely administers that requirement in a practical manner in multiple claims actions and does so by rule instead of by judicial decision."

Thus, the *Sears, Roebuck & Co. Case* makes it clear that Federal Rule 54(b) does not apply to orders that are not *final* under § 1291 of Title 28 of the United States Code but, never-

theless, are appealable, either as a result of some other statutory provision or as a judicially recognized exception to the final judgment rule. *See* Wright & Miller, *supra* § 2658. Federal Rule 54(b) is not an exception to the finality principle; it simply establishes a procedure that expedites review of each separable portion of a multiple claim or multiple party action that has been finally adjudicated. Even though the Federal Rule makes no express provision as ours does "to other statutes," federal courts have interpreted Federal Rule 54(b) as neither superseding or abrogating any other federal statute controlling appellate jurisdiction. *Sears, Roebuck & Co. v. Mackey, supra;* see Wright & Miller, *supra* §§ 2653, 2658.

We note that both plaintiff and defendant in their briefs suggest that the ends of justice require that we determine whether the trial court committed error in entering summary judgment against the plaintiff in the second and third causes of action. From a practical standpoint, it seems to us that justice requires that the appeal be allowed despite the fact that the trial judge failed to enter the words "there is no just reason for delay" in his judgment. This omission could have very well been an inadvertence on the part of the trial judge. He certainly intended that plaintiff be permitted to appeal, or otherwise he would not have entered the appeal entries on account of the language of Rule 54(b) and would have required plaintiff to seek certiorari.

Justice Ervin, speaking for our Court in *Raleigh v. Edwards,* 234 N.C. 528, 529, 530, 67 S.E. 2d 669, 671 (1951), said this:

"Appellate procedure is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final judgment. To this end, the statute defining the right of appeal prescribes, in substance, that an appeal does not lie to the Supreme Court from an interlocutory order of the Superior Court, unless such interlocutory order deprives the appellant of a substantial right which he might lose if the order is not reviewed before final judgment. G.S. 1-277; *Veazey v. City of Durham,* 231 N.C. 357, 57 S.E. 2d 377; *Emry v. Parker,* 111 N.C. 261, 16 S.E. 236."

Our Court held in *Raleigh v. Edwards* that Trial Judge Sharp (now Chief Justice) was correct in permitting a party

claiming an interest in land sought to be condemned to intervene in the proceedings. The Court further held that a petitioner was not entitled to appeal from the order permitting intervention since the party can fully protect its legal rights by preserving exception to the order allowing intervention and appealing from any adverse judgment upon the merits. General Statutes 1-278. Thus, the Court concluded that this interlocutory order allowing intervention did not deprive the petitioner "of a substantial right which it may lose if the order is not reviewed before final judgment."

Webster's Third New International Dictionary at 2280 (1971) defines "substantial right" as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a man is entitled to have preserved and protected by law: a material right."

[2] The causes of action that the plaintiff allege are related to each other. He seeks punitive damages in the second cause because of the alleged misconduct of defendant in the first cause of action. Judge Seay required plaintiff to try his first cause of action, relating to the alleged fraudulent failure of the defendant to pay proper rental. To require him possibly later to try the second cause of action for punitive damages would involve an indiscriminate use of judicial manpower and be destructive of the rights of both plaintiff and defendant. Common sense tells us that the same judge and jury that hears the claim on the alleged fraudulent breach of contract should hear the punitive damage claim based thereon. The third cause of action alleged an anticipatory breach of contract. This arose from the same lease contract that gave birth to the first and second causes. By the same token, the same judge and jury should hear the third cause along with the first and second ones, assuming the plaintiff's cause is not subject to summary judgment.

We believe that a "substantial right" is involved here. If the causes of action were not subject to summary judgment, plaintiff had a substantial right to have all three causes tried at the same time by the same judge and jury. The case falls squarely within the definition of "substantial right" as defined by Webster's, *supra. See also Highway Commission v. Nuckles, supra.* The Court of Appeals was in error in dismissing this appeal.

[1] We hold that the 1967 General Assembly did not restrict the right of appeal provided by G.S. 1-277 and 7A-27(d) by engrafting Rule 54(b) requirements upon them. We hold that Rule 54(b) where it refers to "or other statutes" is speaking in particular of General Statutes 1-277 and 7A-27(d).

The second question is whether the trial court erred in granting summary judgment dismissing plaintiff's claim for punitive damages.

Under the provisions of G.S. 1A-1, Rule 56, the party moving for summary judgment has the burden of clearly establishing that there *is no genuine issue as to any material fact* and that as a result he is entitled to a judgment as a matter of law. *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793 (1972); *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971). "The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Pt. 2 Moore's Federal Practice, *supra* § 56.15[8], at 56-642; *accord, Singleton v. Stewart, supra.*

We must first determine whether or not defendants have carried the burden of proof so as to entitle them to summary judgment.

Plaintiff makes the following allegations in his complaint:

"1. Plaintiff herein incorporates all allegations and paragraphs in his first claim for relief.

"2. Upon information and belief plaintiff alleges that the defendant fraudulently and wilfully failed to pay plaintiff amounts due under the percentage provisions of paragraph 3 of the lease contract.

"3. Upon information and belief plaintiff alleges that defendant wilfully, fraudulently and inaccurately reported the net sales to the plaintiff over a continuing period of time.

"4. That by the defendant's continuing conduct the plaintiff has been deprived of substantial revenues in excess of the sum of $10,000.

"5. That plaintiff is entitled, by virtue of defendant's conduct, to punitive damages in the amount of $100,000."

It will be noted that in paragraph 1 plaintiff incorporates all allegations contained in the first cause of action for breach of contract. In paragraph 6 of the first cause, plaintiff refers to paragraph 3 of the lease contract. That paragraph provides a minimum yearly rental for the various periods of the lease contract. This ranges from an original $10,000 for the first 5 years to $14,500 for the next five years to $15,000 for the final 5-year period. Paragraph 3 further provides:

"The Lessee will pay the Lessor five (5) percent of net sales in excess of $240,000 per annum, including net sales made by any leased department owned by Lessee during the term of this lease. For the option period, if exercised, the Lessee will pay to the Lessor five (5) percent of the net sales in excess of $300,000 per annum, including net sales made by any leased department owned by Lessee during the term of the option."

In order to determine what "net sales" means, we must refer to paragraph 4 of the lease:

"4. That the term 'Net Sales' shall be construed to mean the entire gross sales of merchandise less returns, repossessions, discounts, finance charges on sales, and sales tax levied on sales during the term of this lease."

This lease contract also required that the lessee furnish to the lessor a statement each year giving a sales audit for the preceding year in order to calculate the five (5%) percent rental charge. Paragraph 5 further provided:

"The Lessor, at her expense, has the right to audit the records of the Lessee, if she so desires to verify the statement and computation of the percentage rental."

Plaintiff has in the first cause of action, which is made a part of the second cause for punitive damages, an allegation that "defendants have continually failed to honor the lease provisions in regard to the percentage provision of paragraph 3 by understating the amount of net sales revenues as defined by paragraph 4 of the said lease."

The plaintiff offered into evidence affidavits that showed that for a period of 9 years defendant had misinformed the

plaintiff of his net sales and that the trust was entitled to five (5%) percent of the total understatement of $224,663.92, which five (5%) percent amounts to $11,233.20.

Our Court has held as a general rule that punitive or exemplary damages are not awarded for breach of contract with the exception of a breach of a contract to marry. *King v. Insurance Co.,* 273 N.C. 396, 159 S.E. 2d 891 (1968).

However, in *Swinton v. Realty Co.,* 236 N.C. 723, 73 S.E. 2d 785 (1953), our Court addressed itself to the general proposition involved in our case. Plaintiffs sought damages for fraud arising from a contract arrangement and in addition sought punitive damages. The facts disclosed that the plaintiffs were aged Negroes without education and they were induced to enter a contract for the purchase of a lot that was actually 80 by 150 feet at a price of $2,000 by a false and fraudulent representation that the boundaries were 268 feet wide by 160 yards deep. Trial Judge Bone submitted issues to the jury for actual damages and punitive damages. The jury returned a verdict of $1,500 for each. Our Court in an opinion by Chief Justice Devin modified the judgment by striking out the judgment for punitive damages. Our Court had this to say on the subject:

> "[I]t has been uniformly held with us that punitive damages may be awarded in the sound discretion of the jury and within reasonable limits, though the right to such an award does not follow as a conclusion of law because the jury has found an issue of fraud against defendant. There must be an element of aggravation accompanying the tortious conduct which causes the injury. Smart money may not be included in the assessment of damages as a matter of course simply because of an actionable wrong, but only when there are some features of aggravation, as when the wrong is done willfully or under circumstances of rudeness, oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights. *Baker v. Winslow,* 184 N.C. 1, 113 S.E. 570." *Swinton v. Realty Co., supra* at 725, 73 S.E. 2d at 787.

> "In some cases, in actions to recover damages for fraud, where punitive damages are asked, it is suggested that a line of demarcation be drawn between aggravated fraud and simple fraud, with punitive damages allowable in the one case and refused in the other. In a note in 165 A.L.R.

616, it is said: 'All that can be said is that to constitute aggravated fraud there must be some additional element of asocial behavior which goes beyond the facts necessary to create a case of simple fraud.'" *Swinton v. Realty Co., supra* at 726, 73 S.E. 2d at 787.

Then the Court continued with this language:

"[W]e think the rule is that the facts in each case must determine whether the fraudulent representations alleged were accompanied by such acts and conduct as to subject the wrongdoer to an assessment of additional damages, for the purpose of punishing him for what has been called his 'outrageous conduct.'" 236 *Swinton v. Realty Co., supra* at 726, 73 S.E. 2d at 787.

The Court concluded that the facts in the case were not sufficient to warrant punitive damages, reasoning as follows:

"[T]here was no evidence of insult, indignity, malice, oppression or bad motive other than the same false representations for which they have received the amount demanded. Here fraud is not an accompanying element of an independent tort but the particular tort alleged." 236 *Swinton v. Realty Co., supra* at 727.

It is generally held that punitive damages are those damages which are given in addition to compensatory damages because of the "wanton, reckless, malicious, or oppressive character of the acts complained of." 22 Am. Jur. 2d, Damages § 236 (1965). Such damages generally go beyond compensatory damages, and they are usually allowed to punish defendant and deter others. 22 Am. Jur. 2d, *supra* § 236. It is generally held that punitive damages are recovered not as a matter of right, but only in the discretion of the jury. *Allred v. Graves,* 261 N.C. 31, 134 S.E. 2d 186 (1964); *Hinson v. Dawson,* 244 N.C. 23, 92 S.E. 2d 393 (1956). As a rule you cannot have a cause of action for punitive damages by itself. If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award. *Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968); *Gaskins v. Sidbury,* 227 N.C. 468, 42 S.E. 2d 513 (1947).

Our Court in *Swinton v. Realty Co., supra, cited Saberton v. Greenwald,* 146 Ohio St. 414, 66 N.E. 2d 224 (1946). *See also*

*Finance, Inc. v. Howard,* 42 Ohio St. 2d 178, 327 N.E. 2d 654 (1975). The Supreme Court of Ohio in a four to three decision in *Saberton v. Greenwald* permitted punitive damages for fraudulent representation in the sale of a watch. The facts indicated the seller represented the watch to be new when in fact it had used works, which could not be made to keep good time. These had been put into a new case. The Ohio Court determined that the action sounds in tort rather than in contract, after restating the general principle that punitive damages are not recoverable in an action for breach of contract. The court quoted with approval the following language of 25 C.J.S. Damages § 120, at 1128-29 (1966):

> "[W]here the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages on proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

It is further stated in 25 C.J.S., *supra* § 120, at 1128:

> "Where the requisite aggravated circumstances are present, exemplary damages may be allowed in tort cases even though the tort incidentally involves a contract."

Our Court in *Swinton v. Realty Co., supra,* seems by dicta to adopt the general philosophy as suggested in 25 C.J.S., *supra* § 120, by the use of the following language:

> "[W]e think the rule is that the facts in each case must determine whether the fraudulent representations alleged were accompanied by such acts and conduct as to subject the wrongdoer to an assessment of additional damages, for the purpose of punishing him for what has been called his 'outrageous conduct.'" *Swinton v. Realty Co., supra* at 726, 73 S.E. 2d at 787.

[3] We believe that the allegations contained in the first claim for relief in the complaint are couched in language alleging a

breach of the lease contract, but at the same time allegations of fraud and deceit are obvious from the manner in which the breach is alleged. Plaintiff charges that by intentional understatement of the gross sales defendant substantially reduced the rental to which plaintiff was entitled under the contract. Certainly the second cause, which incorporates the first one, smacks of tort. Plaintiff alleges that "defendant willfully, fraudulently and inaccurately reported the net sales." It seems to us that the overall allegations bring the plaintiff within the rationale of *Swinton v. Realty Co., supra.*

In cases involving fraud, our Court has consistently used language such as the following:

> "Punitive damages are never awarded, except in cases when there is an element either of fraud, malice, . . . or other causes of aggravation in the act or omission causing the injury." *Holmes v. The Railroad Co.,* 94 N.C. 318, 323 (1886) ; see *Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968) ; *Nunn v. Smith,* 270 N.C. 374, 154 S.E. 2d 497 (1967) ; *Van Louven v. Motor Lines,* 261 N.C. 539, 135 S.E. 2d 640 (1964).

It seems to us that in view of the purpose for which punitive damages are assessed the plaintiff has stated a proper cause of action. In the so-called breach of contract actions that smack of tort because of the fraud and deceit involved, we do not think it is enough just to permit defendant to pay that which the lease contract required him to pay in the first place. If this were the law, defendant has all to gain and nothing to lose. If he is not caught in his fraudulent scheme, then he is able to retain the resulting dishonest profits. If he is caught, he has only to pay back that which he should have paid in the first place. See 31 N.C.L. Rev. 473 (1953).

We believe that in this type of contract case with substantial tort overtones emanating from the fraud and deceit the better rule would require that defendant be punished by permitting plaintiff to recover punitive damages. By virtue of such punishment, plaintiff could at least receive expenses he incurred in the litigation.

We conclude that the court erred in granting summary judgment for defendant in the second claim for relief seeking punitive damages. The case is now only in the pleading stage,

and it remains to be seen whether or not the plaintiff will be able to sustain his allegations with proof. John C. McCarthy, Punitive Damages in Bad Faith Cases (1976) (involving generally insurance type cases).

The next question that we must decide is whether the trial court erred in granting defendant's motion for summary judgment as to plaintiff's claim for damages resulting from an alleged anticipatory breach of the lease contract.

In the part of his complaint relating to this cause, plaintiff incorporates the allegations of the first two claims above discussed and in paragraph 2 alleges:

"Upon information and belief plaintiff alleges that defendants are anticipatorily about to breach the lease contract agreement by vacating the premises prior to the expiration of the said lease contract agreement option . . . , as shown in a letter marked 'Plaintiff's Exhibit C' attached hereto . . . . "

"Exhibit C" was a letter advising plaintiff on 22 July 1974 that defendant intended to vacate the premises described in the lease contract on or about 15 October 1974. Shortly thereafter on 31 July 1974, plaintiff filed attachment proceedings in Rowan County Superior Court against defendant. Plaintiff filed supporting affidavits to the effect that he had tried to rent the premises to various firms in the area but had been unsuccessful. Plaintiff filed further affidavits to the effect that defendant conducted a going-out-of-business sale at his Salisbury and Charlotte locations; that on 14 November 1974 defendant mailed him a letter to the effect that the keys to the building would be turned over to him; and that in January 1975 the keys were delivered to plaintiff. The affidavit also indicated that all utilities were terminated on or about 18 November 1974, and that on 30 January 1975 plaintiff received a letter marked Affidavit Exhibit 11 indicating that defendant at that time was being overseen by his creditors, that his liabilities were well in excess of his assets, that he was insolvent and that neither defendant nor his committee of creditors would be responsible for any rent after 31 January 1975. About 31 January 1975, plaintiff received a letter to the effect that defendant's petition for bank-

ruptcy filed 16 October 1974 had been withdrawn. The affidavit of plaintiff dated 22 March 1975 had the following language:

"That the defendant is current in its rent pursuant to said lease only because a bond is in force securing any judgment rendered in this action."

This affidavit along with all the other affidavits of plaintiff and defendant were before Judge Seay when he entered a judgment on 26 March 1975. With regard to the third cause of action, the court entered the following:

"[T]he plaintiff seeks to recover the rent due for the remainder of the term of the lease in question because of anticipatory breach of the lease by the defendant in giving notice of its intention to vacate the premises prior to the expiration of the term of the lease; and it further appearing to the Court and the Court finding as a fact that there is no requirement in the lease that the defendant occupy the premises during the term of the lease."

Thereupon, the trial court entered a summary judgment for defendant for the second and third causes of action and denied summary judgment for the first cause of action. The court reduced defendant's undertaking in the attachment proceedings from $80,000 to $15,000.

Appeal entries were entered by Judge Seay on 4 April 1975 in the usual language without using the clause referred to in Rule 54(b), "there is no just reason for delay."

4 Corbin on Contracts, § 959 (1951) defines anticipatory breach as follows:

"An anticipatory breach of contract by a promisor is a repudiation of his contractual duty before the time fixed in the contract for his performance has arrived. Such a repudiation may be made either by word or by act." See also 11 Williston on Contracts, § 1312 (3d ed. 1968).

Plaintiff contends that defendant had a duty under the lease contract to occupy the demised premises and conduct a business therein because of the following language in the contract dated 1 July 1961:

"2. That the Lessor covenants and agrees to put the Lessee in possession of said premises at the beginning of

said term and guarantees to the Lessee, peaceful and un-
interrupted possession thereof So Long As It Occupies,
complies with, and performs the covenants and conditions
of this lease." (Emphasis added.)

[4] The only reference in the lease contract to defendant's
occupying the premises is that referred to in paragraph 2 above.
Since defendant has continued to pay the minimum rent on the
premises as required by the lease agreement, the sole question is
whether the lease itself gives plaintiff a cause of action for
defendant's notice of intent to vacate the premises. It seems to
us that the portion of the lease relied upon by plaintiff as estab-
lishing defendant's duty of occupancy is in fact a statement of
plaintiff's obligations to the defendant. A proper construction
of the language seems to say that plaintiff guarantees defend-
ant's right to peacefully occupy the premises during the term
of the lease.

[4] Without a provision in the lease requiring defendant to
occupy the premises, it appears that plaintiff fails to state a
proper cause of action for anticipatory breach of contract unless
we can read a duty to occupy into the contract by looking at it
"from its four corners" and determining there is an implied
covenant to do business.

Paragraph 1 of the lease provides:

"1. That for the consideration, and upon the terms
and conditions hereinafter set forth, the Lessor hereby
leases unto the Lessee, for the operation of a retail furni-
ture business and kindred lines, and any other retail or
wholesale business not competitive with Oestreicher-Winner
in their present line of business, and which does not violate
any local ordinance, the following described premises. . . . "

The fact that the purpose for which the lease was entered was
not restricted to a high sales type business that would tend to
produce net sales over $240,000 or $300,000 so as to promote acti-
vation of the rent provisions for 5% of net sales over these
amounts further indicates that the parties did not intend to
impose a duty to occupy and conduct business.

Paragraph 13 of the lease provides:

"13. . . . The Lessee has the right to transfer, or as-
sign this lease, or to sublet any part of the leased premises

provided the business to whom the property may be leased or sublet is not competitive with Oestreicher-Winner in their present line of business, during the first ten (10) years of this lease."

That the lessee had the right for the first 10 years of the lease to transfer, assign or sublet the lease so long as the business was not competitive with Oestreicher-Winner is further indication that the parties did not intend to impose a duty to occupy and conduct a high sales business so as to promote activation of the rent based on net sales.

This kind of case has been litigated in other jurisdictions under varying factual situations providing varying results. See cases cited in the following: 1 Friedman on Leases, §§ 6.9-6.11 (1974) ; 40 A.L.R. 3d 971 (1971) ; 32-39 A.L.R. 2d Later Case Service 728-730 (1969) ; 38 A.L.R. 2d 1115-1116 (1954) ; 170 A.L.R. 1117-1121 (1947).

Our Court in *Jenkins v. Rose's Stores, Inc.*, 213 N.C. 606, 197 S.E. 174 (1938) has had occasion to deal with this subject. In this case the lease contract provided for an annual rental of 5 percent of gross sales, with a guaranteed minimum annual rental of $2,400. The lease contract commenced in 1933 and was renewed for 1934, 1935 and 1936. $2,400 ($200 per month) has been paid for 1936 without prejudice to other rights. Plaintiff contended that a balance of $1,248.18 was due for 1936. Defendant contended that the $2,400 paid was a full settlement for that year.

The pertinent part of the lease dealing with this controversy is as follows:

"(1) The lessors (the plaintiffs) do hereby demise and let unto the lessee (the defendant) and the lessee agrees to take and pay for, as hereinafter provided, for a period of one (1) year, beginning the 1st day of January, 1933, and ending the 31st day of December, 1933, the following described premises . . . . (2) The lessee shall have and hold said property with the privilege of quiet and unmolested possession for the term of one (1) year, as above set forth, for which the lessee agrees to pay as rental five percent (5%) of the gross sales made by the store operating in said building during the twelve months from January 1, 1933, to December 31, 1933; the lessee guarantees the

lessors a minimum rental of two thousand and four hundred ($2,400.00) dollars for said term of one year, which shall be paid in monthly installments of two hundred dollars ($200.00) per month, at the end of each month, said minimum rental of $2,400.00 to cover the rental of 5% on the first forty-eight thousand dollars ($48,000.00) of sales made by the store in said building, from January 1, 1933, to December 31, 1933, and upon the expiration of said term if said sales shall have exceeded $48,000.00, the lessee shall account to the lessors for and pay over to them the sum of five percent (5%) on any sales in excess of $48,000.00 so that the total rent paid shall represent 5% on all sales made by the store in said building during the term of this lease."

Defendant retained the premises under this lease through 1936 and paid plaintiff rents for said years in the sums of $3,126.88, $3,609.07, $3,648.18 and $2,400.00, respectively. In 1936 defendant did not operate a store on the premises but conducted its business in another location in the same town. Plaintiff based his claim for additional rent on the basis of the rent paid for the previous year, 1935. Plaintiff contended that under the lease defendant was bound to conduct a store on the premises with reasonable diligence and that its failure to do so was a breach of the contract of lease. The lower court, after finding facts, rendered judgment in the amount of $1,061.38, this being 5 percent of the average gross sales for the years 1933, 1934 and 1935, after deducting $2,400.00. Our Court reversed and held that the lease failed to show any agreement requiring defendant to operate a store within the demised premises. The Court further held that the lease showed that plaintiffs protected their interests by requiring a minimum rental and that plaintiff would get this whether defendant operated the store at a loss or at a profit. Defendant contended there was an implied covenant, but our Court held that this was not so. In an opinion by Justice Schenck, speaking for our Court, it was said:

"The rule applicable to the duty of a tenant to occupy or use the premises is thus stated in the annotations of 46 A.L.R., at page 1134: 'Apart from the question of liability for waste, it seems that the tenant is under no obligation, in the absence of specific provision therefor, to occupy or use, or continue to use, the leased premises, even though one of the parties, or both, expected and intended that they

would be used for the particular purpose to which they seemed to be adapted or constructed.'" *Jenkins v. Rose's Stores, Inc., supra* at 609.

This case seems to be almost on "all-fours" with our case. We are thus controlled by it and hold that there was no implied covenant to do business under the terms of this lease where the use of the premises is not restricted to a high sales business that would activate the percentage rent provision and the lessee may transfer, assign or sublet to any business not competitive with lessor's business.

Finally, plaintiff contends the court erred in reducing defendant's original undertaking from a bond of $80,000 to a bond of $15,000.

At the outset we find the record quite fragmentary. The only entry in the record on this subject after execution of defendant's undertaking of $80,000 was that made by Judge Seay in his summary judgment order:

> "IT IS FURTHER ORDERED that the amount of the defendant's undertaking in the attachment proceeding herein be reduced to Fifteen Thousand Dollars."

Plaintiff excepted to this and assigns it as error. Plaintiff made no motion to require the trial judge to find the facts concerning the bond reduction.

[5] When this matter was heard, Judge Seay had before him all the pleadings in the case, as well as all the affidavits that had been offered by both sides. Presumably he took all these into consideration in arriving at the summary judgment entered, as well as the reduction in defendant's bond. Upon rendition of summary judgment for defendant as to the second and third causes of action, with only the first cause remaining, Judge Seay had the right to exercise his discretionary power to reduce the bond substituted for the attached property and, thus, keep the bond basically in proportion with the remainder of the case. *See* G.S. 1-440.37.

In *Millhiser v. Balsey,* 106 N.C. 433, 435, 11 S.E. 314, 315 (1890), our Court set forth the proper procedure for perfecting an appeal upon rendition of a judgment vacating a warrant of attachment and like judgments such as the vacation or modifica-

tion of a bond substituted for the attached property pursuant to G.S. 1-440.39:

> "In this and like cases, it is the province of the Judge in the Court below to hear the evidence, usually produced before him in the form of affidavits, find the facts and apply the law arising thereupon. *Pasour v. Lineberger,* 90 N.C., 159 and the cases there cited. If a party should complain that the Court erred in so applying the law, then he should assign error and ask the Court to state its findings of the material facts in the record, so that he might have the benefit of his exceptions, on appeal to this Court. In that case, it would be error if the Court should fail or refuse to so state its findings of fact, and the law arising upon the same.

> "Such practice affords the complaining party reasonable opportunity to have errors of law, arising in the disposition of incidental and ancillary matters in the action, corrected by this Court, while, in very many cases, it lessens the labor of the Court below, expedites proceedings in the action and saves costs."

[6]   Since plaintiff failed to request findings of fact to justify the modification of defendant's bond, it is presumed that the trial judge found facts sufficient to support his order, and this is not reviewable on appeal. *Lumber Co. v. Buhmann,* 160 N.C. 385, 75 S.E. 1008 (1912). Plaintiff apparently acquiesced in the discretion exercised by the trial judge and cannot be heard to complain now. Error must be shown by the party alleging it. *Lumber Co. v. Buhmann, supra.*

The court finds no error in the reduction of defendant's undertaking to $15,000.

The result is as follows:

(1) The opinion of the Court of Appeals dismissing the appeal is reversed.

(2) The order of the trial judge in entering summary judgment for defendant as to the second cause of action is reversed.

(3) No Error in the order of the trial judge in entering summary judgment for defendant as to the third cause of action.

(4) No Error in the reduction of defendant's undertaking to $15,000.

Justices LAKE, HUSKINS, and EXUM concur in the result.

Chief Justice SHARP concurring and dissenting.

I concur in the majority's decision that the Court of Appeals has misconstrued G.S. 1A-1, Rule 54(b). The majority opinion correctly states, "Certainly the General Assembly did not intend to restrict the right of appeal provided by G.S. 1-277 and 7A-27(d) by engrafting Rule 54(b) requirements upon them." Indeed, Rule 54(b) makes appealable judgments which were not appealable prior to its enactment.

Under G.S. 1-277 a partial summary judgment which determined fewer than all of the claims in a multiple-claim action would not be immediately appealable unless the order affected a substantial right. This is true because such an order would not finally determine the entire action—there would still be claims remaining in the case. Under G.S. 1-277 the general rule is that " 'an appeal will not lie until there is a final determination of the whole case. It lies from an interlocutory order only when it puts an end to the action or where it may destroy or impair or seriously imperil some substantial right of the appellant.' " *State v. Childs,* 265 N.C. 575, 578, 144 S.E. 2d 653, 655 (1965). *See Veazey v. Durham,* 231 N.C. 357, 57 S.E. 2d 377 (1950).

All Rule 54(b) did was to restrict the unit to which the finality concept would be applied. In other words, it allows the trial judge to authorize an appeal from a judgment that finally determines a claim for relief even though there are other claims remaining in the action. The only additional requirement that must be met is that there is no just cause for delay. The same order or judgment would not necessarily be appealable under G.S. 1-277 unless it also affected a substantial right. Thus Rule 54(b) has the effect of increasing the avenues of appellate review. Final judgments on fewer than all the claims are now immediately appealable if the trial judge determines that there is no just cause for delay, regardless of whether those judgments affect substantial rights as that term has been previously defined. This is what I believe the comment to Rule 54(b) means when it says:

"In considering this section, it should be remembered that § 1-277 was left intact except as modified by this section. In other words appeals will continue to lie only when a 'party aggrieved' has been deprived of a 'substantial right,' or from

a final judgment. The modification here is that when there is no just reason for delay and when there is an express determination to that effect, the unit to which the finality concept shall be applied is by this rule made a smaller one. Thus, if two claims are presented to the trial court and one of them is the subject of a disputed ruling, an appeal will lie if the ruling would have been appealable in an action involving that claim alone and if the judge makes the requisite determination." N. C. Gen. Stats., Vol. 1A at p. 700.

I also agree that in any claim for relief in which issues of compensatory and punitive damages are properly for the jury both issues should be tried at the same time by the same judge and jury, and that to require them to be tried separately at different times would violate a substantial right. In such a situation, however, multiple claims are not involved. "[W]hen plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and subdivision (b) [of Rule 54] does not apply." 10 C. Wright & A. Miller, Federal Practice and Procedure § 2657 (1973).

Further, in my view, this case involves no issue of punitive damages. The complaint in the present action purports to allege three (3) separate claims for relief, all relating to defendant's alleged failure to perform its obligations as plaintiff's lessee.

In the portion captioned "first claim for relief," plaintiff alleges she was entitled to receive as rent in addition to a guaranteed minimum amount, a percentage of the net sales; that defendant, by understating the amount of its net sales had failed to comply with its obligation; and that, by reason of said failure, defendant is indebted to plaintiff in an amount in excess of $10,000.00 plus interest.

In the portion captioned, "second claim for relief," plaintiff alleges, upon information and belief, that defendant "wilfully, fraudulently and inaccurately reported the net sales to the plaintiff over a continuing period of time," thus depriving plaintiff of substantial revenues in excess of $10,000.00; and on account of defendant's conduct plaintiff is entitled to recover punitive damages in the amount of $100,000.00.

In the portion captioned, "third claim for relief," plaintiff alleged she was damaged in the amount of $30,000.00 plus interest, costs, and legal fees, because defendant closed its store

in breach of the contract and vacated the leased premises prior to the expiration of the term. This third claim is referred to as one for an "anticipatory breach."

It is noted that plaintiff does not allege that defendant has failed to pay any portion of the guaranteed minimum rental.

Recovery on plaintiff's "first claim for relief," that is, for defendant's failure to meet its contractual obligations, is prerequisite to *consideration* of her "second claim for relief." Both relate to whether defendant has paid in full the rental it was obligated to pay—in excess of the guaranteed minimum rental—based on its net sales during the period defendant conducted its business in the leased premises.

I agree with that portion of the Court's opinion which holds that defendant was not obligated to remain in possession and carry on business in the leased premises until the expiration of the term of the lease. Hence, I agree that summary judgment for defendant on the "third claim for relief" was properly entered.

I dissent from that portion of the Court's opinion which holds that in her "second claim for relief" plaintiff has stated "a proper cause of action for punitive damages." In my opinion, these allegations concerning the recovery of punitive damages fail to state a claim upon which relief can be granted, and I agree with Judge Seay that from the affidavits and pleadings it affirmatively appears that plaintiff cannot prove entitlement to punitive damages. *See Hardy v. Toler,* 288 N.C. 303, 218 S.E. 2d 342 (1975) ; *Nunn v. Smith,* 270 N.C. 374, 154 S.E. 2d 497 (1967). I therefore dissent from the majority decision reversing summary judgment for defendant on the so-called "second cause of action."

No decision has come to my attention which holds that a plaintiff is entitled to recover punitive damages on account of a defendant's failure to pay what he is obligated by contract to pay. Moreover, the cases cited in the Court's opinion are in full accord with my view.

In *King v. Insurance Co.,* 273 N.C. 396, 159 S.E. 2d 891 (1968), the order from which the plaintiff appealed allowed the defendant's motion to strike from the complaint the allegations concerning the recovery of punitive damages and the prayer therefor. The defendant's motion to dismiss the appeal was overruled on the ground the order was in the nature of a judg-

ment sustaining a demurrer for failure to allege facts sufficient to constitute a cause of action for punitive damages.

In *King,* the plaintiff sued his liability insurance company for compensatory and punitive damages. He alleged the defendant had wilfully breached its contractual obligations by refusing to defend a counterclaim which had been asserted against the plaintiff in an automobile collision case and by failing to pay the judgment obtained against the plaintiff on the counterclaim.

The allegations upon which the plaintiff based his right to recover punitive damages were as follows: He referred to the defendant's conduct as "aggravated fraud." He referred to the defendant's breach of contract as "wilful," "intentional," in "wanton disregard of the rights of the plaintiff," and as "calculated . . . to hamper, prevent and/or impair the plaintiff's legal position" in the automobile collision case.

The opinion of Justice Lake states: "With the exception of a breach of promise to marry, punitive damages are not given for breach of contract. *Swinton v. Realty Co.,* 236 N.C. 723, 73 S.E. 2d 785; *Richardson v. R. R.,* 126 N.C. 100, 35 S.E. 235; Restatement of the Law, Contracts, § 342. See also: Williston on Contracts, Rev. Ed., § 1340; Sutherland on Damages, 4th Ed., § 390; Sedgwick on Damages, 9th Ed., § 603; McCormick on Damages, § 81; Hale on Damages, p. 318; 22 Am. Jur. 2d, Damages, § 245; 25 C.J.S., Damages, § 120; Annot., 84 A.L.R. 1345." *Id.* at 398, 159 S.E. 2d at 893. The Court concluded: "The complaint in the present action, including the allegations striken by the order of the superior court, alleges only a breach of contract by the defendant." *Id. See* J. McCarthy, Punitive Damages in Bad Faith Cases, § 2.29 (1976).

We are not considering a factual situation in which it is alleged that a party was induced to enter into a contract by reason of false and fraudulent representation. Such a factual situation was involved in *Saberton v. Greenwald,* 146 Ohio St. 414, 66 N.E. 2d 224, 165 A.L.R. 599 (1946); *Swinton v. Realty Co.,* 236 N.C. 723, 73 S.E. 2d 785 (1953), referred to in the Court's opinion.

In *Swinton,* the plaintiff alleged, and the verdict established, that defendants induced the plaintiff to purchase a lot of land 80 by 150 feet at the price of $2,000.00 by falsely and fraudulently representing that the boundaries of the lot as

designated and pointed out by the defendants embraced an area "268 feet wide and 160 yards deep." Answering separate issues, the jury awarded the plaintiff actual damages of $1,500.00 and punitive damages at $1,500.00. The defendant appealed from a judgment that the plaintiff recover in accordance with the verdict. This Court modified the judgment by striking therefrom the allowance of punitive damages. The opinion of Chief Justice Devin states: "We are inclined to the view that the facts in evidence here are not sufficient to warrant the allowance of punitive damages. There was no evidence of insult, indignity, malice, oppression or bad motive other than the same false representations for which they have received the amount demanded. . . . We do not think the law requires that an additional amount for punishment should be meted out in this action." *Id.* at 727, 73 S.E. 2d at 788.

As in *King,* the epithets used to describe the defendant's conduct are insufficient to constitute a claim for punitive damages. We note that G.S. 1A-1, Rule 9 (b) provides: "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." As we said in *Mangum v. Surles,* 281 N.C. 91, 96, 187 S.E. 2d 697, 700 (1972), "Rule 9 (b) codifies the requirement previously existing in our State practice that the facts relied upon to establish fraud, duress or mistake must be alleged."

In the present case plaintiff has alleged and shown only an intentional breach of contract. Her second claim for relief does not adequately allege an action for fraud or deceit but merely realleges the underlying basis of her contract action.

Justices BRANCH and MOORE join in this opinion.