151 So.2d 247

**BOARD OF SCHOOL COMMISSIONERS
OF MOBILE COUNTY**

v.

**E. D. HUDGENS et al.**

1 Div. 20.

Supreme Court of Alabama.

March 14, 1963.

Palmer Pillans, W. D. Reams, Pillans, Reams, Tappan, Wood & Roberts and Fred W. Killion, Jr., Mobile, for appellant.

Armbrecht, Jackson, McConnell & De-Mouy, Mobile, for Mobile Teachers' Assn.

Holberg, Tully & Hodnette, Mobile, for appellees Hudgens and others.

Caffey, Gallalee & Caffey, Mobile, for appellee intervenors.

MERRILL, Justice.

This appeal is from a final decree in equity declaring the rights of retired school teachers, teachers nearing retirement, the Mobile Teachers' Association and the Board of School Commissioners of Mobile County.

In order to better understand this opinion, some definitions are in order:

Complainants (appellees)—A group of retired school teachers.

Intervenors (appellees)—A group of active teachers of substantial years of service but not yet retired.

Respondents (appellees)—Mobile Teachers' Association, called MTA, and its officers. The sole function of MTA is to administer the retirement fund which is the subject of this suit.

Board (appellant)—Board of School Commissioners of Mobile County.

On April 27, 1960, the complainants filed their original bill alleging therein that they were facing the loss of their pensions, which were derived from a pension plan instituted in 1916, and under which they had made compulsory payments for many years, on account of the action of the MTA in amending its constitution, thereby terminating the pension plan. This bill asked for relief of an immediate nature enjoining the respondents from putting into effect the just adopted constitutional amendment and seeking to preserve the status quo of the pensions until the matter could be adjudicated.

The bill also asked for a declaration of the rights of the complainants to the effect that the said meeting terminating the pension plan was void, that they had entered into a contract of membership with the association which they had completely fulfilled by making the necessary contributions thereto and by retiring and qualifying, and that MTA be kept alive and the School Board be required to continue the deductions until such time as the pensions had been completely paid; that the court declare that the active members of the MTA be considered trustees of the corpus or property of the association and that the trust could not be dissolved nor terminated without the consent of each cestui que trust, (complainants and their class) who have a vested interest therein.

The intervenors, or "nearly retired teachers," were permitted to intervene in the cause and sought relief along the same lines requested in the complaint.

After demurrers had been disposed of by the court, the School Board and the respondents filed answers. The respondents incorporated therein a cross bill against the School Board and the complainants seeking to have the action of the respondent MTA, terminating the trust, affirmed by the court and for other relief of a similar nature.

At a hearing on May 11, 1960, the trial court entered a temporary restraining order and the required bond was posted by the complainants.

The case was tried on its merits in March, 1961. On July 27, 1961, the court rendered its decree which was amended nunc pro tunc on August 10, 1961.

The bill shows that in 1916, MTA was formed to establish a pension system for white teachers in Mobile County. The constitution provided for sick benefits, teach-

ers' annuities and encouraging professional growth of teachers. A stated percentage of the monthly salary of each member was to be deducted, the amount of the annuities and sick benefits were fixed and a method stated for amending the constitution. The Board agreed that it would require all white teachers to belong to MTA and would deduct monthly from their salaries payments on the following scale: Teachers in service, 1 to 5 years, ½%; 6 to 10 years, 1%; 11 to 20 years, 1½%, and over 20 years, 2½%.

This plan went along without much dissent until the passage of the statewide Teacher Retirement Act in 1940 and the inclusion of teachers in the Federal Social Security System in 1955. Finally, there were enough "young or younger teachers" who wanted to get out of MTA and in April, 1960, a special meeting of MTA was held, after notice, and a majority voted to terminate the pension plan and that only members of MTA who retired prior to July 15, 1960, would be entitled to receive annuities thereafter and then only so long as the funds should last. There was approximately $200,000 in the trust fund.

Complainants (retired teachers) allege they have a vested right to receive the pensions and contend that the action of MTA was void; that the amendment to the MTA constitution was void; that MTA has agreed to continue to pay the annuities; that the Board being a party to the arrangement should be required to contribute to support the pensions and requested a temporary order restraining the Board from ceasing to collect the monthly payments from the teachers, and restraining MTA from operating under the amendment to the constitution. The restraining order was granted and it preserved the status quo. After demurrers were overruled, answers filed and proof taken, the trial court rendered a decree which (a) set aside and declared to be void the amendment to the MTA constitution of April 12, 1960; (b) permanently enjoined and restrained MTA,

its officers, etc., from carrying into effect the amendment of April 12, 1960; (c) set up a pension system whereby it would be actuarially sound because each member would pay 3% per month and it was based on voluntary membership; provided for funds deducted after 1961 from salaries of teachers who did not desire to remain in the fund to be repaid to them; provided no funds to be repaid for contributions made prior to the date of the decree; that teachers who retire prior to July 15, 1960, should be entitled to 90% of the benefits they were receiving and the teachers who retire after July 15, 1960, and voluntarily remained in the plan should be entitled to 80% of the annuities. The School Board was directed to contribute to the plan by paying annual installments for a period not in excess of 20 years to fund the balances necessary to insure the payment of the benefits, provided that no such contributions by the Board in any one year should exceed $30,000.

### The School Board (appellant).

The Board takes no position in the argument between the complainants and intervenors and MTA. Its position is that it has never had the authority to pay public money into the pension fund set up in 1916 by MTA and that the trial court was without authority to require the Board to do a thing (contribute money to the pension fund) which is beyond the corporate powers granted to it by the Legislature.

The Board of School Commissioners of Mobile County is of statutory creation by the Legislature over 100 years ago, and is a separate and distinct school system and this distinctness is recognized in Sec. 270 of the Constitution of 1901. The history of the Board is stated in Board of School Commissioners of Mobile County v. Hahn, 246 Ala. 662, 22 So.2d 91. In that case, the Board was contending that the Teacher Tenure Act did not apply to Mobile County because of Sec. 270 of the Constitution. This court held that "Section 270 does not inhibit the application of the teacher tenure

**650**

provisions of said chapter to the teachers of Mobile County".

██ We have studied carefully the various statutes relating to the Board and we are of the opinion that there is no legislative or other authority for the Board to contribute up to $30,000 per year for 20 years to the pension fund created by MTA.

It is argued that the Board has the power to participate in the pension plan because the Act relating to the powers of the Board states:

> "The said Board of School Commissioners * * * shall have full power to continue in force, revise, modify and improve, as to them may seem fit, the public school system now existing in the County of Mobile, and to make such by-laws, rules and regulations not inconsistent with the laws of this State, and of the United States, for the government of the Board and of said schools as they may deem expedient or necessary."

We cannot agree.

General clauses in charters of municipalities or state created agencies whereby the governing authorities are granted expressly or in equivalent terms, powers to do all things that in their discretion may seem necessary for the good order and welfare of the municipality or agency, are only efficient to grant to that body the right to exercise a discretion within the scope of the authority conferred. Pearson v. Duncan, 198 Ala. 25, 73 So. 406, 3 A.L.R. 242. We cannot find the necessary legislative authority in the portion of the statute quoted, supra.

██ Another reason is the State Teachers' Retirement System. Besides agreeing to belong to MTA, a Mobile County teacher agreed to accept the State Retirement Plan, which, of course, provides for participation with and payment of public funds to help its financing. Tit. 52, §372, provides: "No other provision of

law in any other statute which provides wholly or partly at the expense of the State of Alabama or of any political subdivision thereof for pensions or retirement benefits for teachers of the said state, * * * shall apply to members of the retirement system established by this chapter; * * *." This general statute, passed in 1940, applied to all Mobile County teachers employed since 1940 and, as we understand, there are only 18 retired teachers who are not receiving benefits under the State Retirement System, and 19 employed teachers not covered by that system. So except for those 37 teachers, the Board is prohibited by law from providing benefits for any teachers under the retirement system.

But intervenors argue that the Board, even if it acted without authority, is estopped from asserting its lack of power. It is urged that the Board has participated because of its contractual requirement that all white teachers belong to MTA, and that the Board endorsed, approved and adopted the plan.

The following was a part of every contract of employment submitted to every white teacher in Mobile County:

> "The Rules and Regulations of the Board of School Commissioners require among other things, that you:
>
> * * * * * *
>
> "4. Accept the pension plan adopted by the Mobile Teachers Association, white, which provides for a sick benefit and an annuity, payments for which will be deducted monthly from salaries as follows: Teachers in service in the system from 1 to 5 years, ½ per cent; 6 to 10 years, 1 per cent; 11 to 20 years, 1½ percent; over 20 years, 2½ per cent. (This does not apply to Negro teachers.)"

While this requirement, and the consequent deductions were mandatory, the Board was merely an agency for collecting the deductions and paying them over to

MTA, which had the sole authority in the handling and dispersal of the funds. The Board has done that since 1916 and would have continued to do it had MTA not changed its constitution and directed the Board to cease making the collections. It is admitted by all the parties that the Board has never been under any obligation to pay anything into the pension fund other than the salary deductions prior to the present decree.

■ While there are some situations where political subdivisions or state created agencies are subject to the doctrine of estoppel, this is not such a situation. We apply the usual rule that such bodies cannot be estopped by doing that which they had no authority or right to do. County Board of Education of Coffee County v. City of Elba, 273 Ala. 151, 135 So.2d 812; Board of Zoning Adjustment for City of Lanett v. Boykin, 265 Ala. 504, 92 So.2d 906; Alabama Red Cedar Co. v. Tennessee Valley Bank, 200 Ala. 622, 76 So. 980; Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 So. 122, 5 L.R.A. 100; City of Eufaula v. McNab, 67 Ala. 588; Marion Bank v. Dunkin, 54 Ala. 471.

■ Complainants argue that the pension plan "is not statutory in its origin or creation," but is based upon contract between three parties, the Board, MTA and the individual teachers. Insofar as the Board is concerned, it is at once obvious that the court has made a new contract, by making the Board liable up to $30,000 in any one year, with a total maximum liability of $600,000 when it had never contracted to do more than collect and pay over small salary deductions of its teachers. Courts cannot tamper with and change the terms of contracts, Goodman v. Georgia Life Ins. Co., 189 Ala. 130, 66 So. 649; Melco System v. Receivers of Trans-America Ins. Co., 268 Ala. 152, 105 So.2d 43.

We hold that the trial court erred in requiring the Board to pay public money into the MTA pension fund and as to that part of the decree, it must be reversed.

MTA, complainants and intervenors.

The main features of the MTA benefits as originally adopted in 1916 were an annuity of $240 per year for any teacher who had taught for 30 years and a $5 per week sick benefit. In 1927, the constitution was amended to raise the annuity to $360 per year and the sick benefit to $7 per week. In an amendment in 1956, the annuity was increased to $540 per year and the sick benefit to $14 per week.

The recent majority of MTA opposed the MTA pension plan because of (1) the compulsory feature, (2) because of additional deductions for Social Security and the State Retirement System, (3) the MTA plan was financially and actuarially unsound, (4) the uncertainty of receiving benefits (only after teaching 30 years and attaining 60 years of age), (5) no correlation between the amount contributed and the benefit received (a person teaching 40 years would receive no more than a person teaching 30 years at a lesser salary, even though the 40-year teacher paid more each month), (6) there was no matching, (7) the built-up benefits were lost if the teacher accepted employment in another county.

At a meeting of MTA on April 12, 1960, a majority voted to terminate the pension plan and also voted that only those members of MTA who retired prior to July 15, 1960, would be entitled to receive annuities thereafter, and then only so long as the funds on hand lasted. This is the action which precipitated this suit.

As of the date of the hearing in May, 1960, there were 115 retired teachers, with 15 additions who retired prior to July 15, 1960. There were 300 teachers in the group represented by the intervenors, leaving approximately 900 active teachers not represented in the retired or intervenor groups.

The evidence is conclusive, and the trial court recognized, that MTA will become

unable to pay benefits to all entitled at the present rate of income since the plan is not actuarially sound. The chancellor's order for the payment by the Board of up to $30,000 per year for 20 years was an effort to put the pension plan on a sound financial basis.

But we have now held that the Board cannot, under existing law, pay any public money into the pension fund. That leaves MTA in a hopeless position. A majority of MTA has voted to stop the plan now with all active teachers losing what they have paid in, and the balance going to the retired teachers as far as it would go.

The members must not forget that they are both an insuror as well as an insured. Both complainants (retired) and intervenors (near retirement) helped carry along this actuarially unsound and inequitable arrangement and were parties to the raising of the benefits to be paid. The members who testified said they were aware of the amendatory provisions of MTA constitution.

■ One who becomes a member of an association is deemed to have known and assented to its by-laws, rules and regulations and cannot be heard to object to their enforcement thereafter, and such person may validly agree to be bound by the constitution, by-laws, rules and regulations of an association existing at the time the membership begins or those that may be thereafter adopted in accordance with the constitution of such association. 4 Am. Jur., Associations and Clubs, § 6, p. 469, Supreme Commandery of the Knights of the Golden Rule v. Ainsworth, 71 Ala. 436; Woodmen of the World v. Alford, 206 Ala. 18, 89 So. 528. Here, the MTA Constitution was amended according to the constitutional provisions.

■ We hold that MTA does have the right to discontinue the pension plan and to direct the Board to stop making compulsory deductions. We realize that every member of MTA is going to lose, with

intervenors possibly losing most, because most of the retired teachers will actually receive more than they paid in. But we cannot justify the continuance of a plan against the wishes of a large majority of the association when the continuance means a worsening of an already financially unstable plan.

■ "In applying the doctrines of equity, the equities on both sides are to be considered." McFry v. Stewart, 219 Ala. 216, 121 So. 517. We have tried to consider the equities of all involved in this matter. We are not positive that the decision of MTA to continue to pay annuities to the retired teachers as of July 15, 1960, at the present rate is the best solution. The retired teachers could be paid longer if they were paid the benefit promised when they joined rather than the benefit in effect when they retired. But we do not pass on those matters here because they can best be handled by the trial court in conjunction with the best thought and suggestions from the interested parties.

We know that the Legislature meets in regular session in May of this year. It is possible that legislative relief might be sought. It is also possible that a voluntary assessment of contributions could be evolved along the lines suggested by the trial court's decree.

But these possibilities require time to explore and various and sundry conferences. In view of these facts, we direct that, in the absence of an agreement of the parties approved by the trial court, the status quo shall be maintained until June 1, 1963.

That part of the decree ordering the Board to contribute to the fund is reversed; and the cause is remanded for the working out of the best and most equitable solution possible in accordance with this opinion, and the deduction of contributions from MTA members may continue until June 1, 1963, unless an agreement, approved by the trial court, is achieved before that time. If no agreement can be reached, the trial

court shall order the termination of the pension plan of MTA under such conditions as seem most equitable under the circumstances.

The request for attorneys' fees is denied.

Affirmed in part, reversed in part and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.