MAINE CENTRAL RAILROAD
COMPANY

v.

BANGOR & AROOSTOOK RAILROAD
COMPANY and Whittaker
Corporation.

Supreme Judicial Court of Maine.

Dec. 4, 1978.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster by Jotham D. Pierce, Jr. (orally), Ralph I. Lancaster, Jr., George J. Marcus, Portland, for plaintiff.

Verrill & Dana by John A. Mitchell (orally), John R. McKernan, Jr., Portland, for Bangor & Aroostook R.

Hewes, Culley & Feehan by George W. Beals (orally), Peter W. Culley, Portland, for Whittaker Corp.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This controversy results from a railroad derailment that occurred at Clinton, Maine, on October 20, 1971. The derailment took place after some twenty freight cars belonging to the Bangor & Aroostook Railroad (BAR) had been interchanged to a train belonging to Maine Central Railroad (MEC) and operated by MEC on its tracks. Maine Central alleges that the derailment occurred because BAR had modified several of its cars on an experimental basis. The modification, it is alleged, caused the center sills running lengthwise on BAR # 3121 to break and drop into the roadbed, derailing BAR # 3121 and the following thirty cars in the Maine Central train.

The matter is before us as a result of an appeal from the Superior Court's denial of an application for confirmation of an arbitration award pursuant to 14 M.R.S.A. § 5937. We sustain the appeal.

Maine Central, after making good the damages sustained in the derailment to cars owned by other railroads, instituted an action against BAR and Whittaker Corporation, the successor in interest to the manufacturer of the allegedly defective car.

Both BAR and MEC are members of the Association of American Railroads (AAR), and each had become a signatory in 1920 to an Interchange Agreement promulgated by the forerunner of the AAR. This Agreement stated, *inter alia,* that the signatories agreed to abide by "*each and all decisions and interpretations of the Arbitration Committee.*"

Prior to the commencement of the action by MEC, BAR sought to institute arbitration proceedings in accordance, BAR alleges, with AAR rules. MEC refused to submit to arbitration. Accordingly, an *ex parte* arbitration award was granted on March 29, 1972, stating that MEC was initially responsible, under the Association's Interchange Rules, for the damage sustained by BAR's cars in the derailment. MEC refused to abide by this award, and BAR sought confirmation of it under 9 U.S.C. § 9[1] in the District Court of the District of Columbia in December of 1972. The award was made by the AAR Arbitration Committee sitting in Washington, D.C. The Court found, however, that § 9 did not vest independent jurisdiction in a federal district court, and that no other basis for asserting jurisdiction existed. The action was dismissed for lack of jurisdiction. *Bangor & Aroostook Railroad Company v. Maine Central Railroad Company,* 359 F.Supp. 261, 264 (D.C.D.C.1973).

This action was commenced by the filing of a complaint by Maine Central in the Superior Court, Cumberland County on January 26, 1973. On May 31, 1973, BAR filed an application for confirmation of its award pursuant to 14 M.R.S.A. § 5937[2] and 9 U.S.C. § 9. That application was heard on November 12, 1976 and denied by Order dated December 15, 1976. This appeal, premised on 14 M.R.S.A. § 5945,[3] followed.

This appeal presents two major issues for our consideration. Initially we are presented with a motion to dismiss the appeal by appellee Maine Central, premised on its contention that the order appealed from is non-appealable under Rule 54(b), M.R. Civ.P.,[4] and that, wholly apart from Rule

---

1. Section 9 of Title 9, the United States Arbitration Act, provides:

    *If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award . . . and shall specify the court, then . . . any party to the arbitration may apply to the court so specified for an order confirming the award . . . If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made.*

2. 14 M.R.S.A. § 5937 provides:

    *Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 5938 and 5939.*

3. *See infra,* § I.

4. The Rule 54(b) M.R.Civ.P. issue arises from the following procedural history: MEC instituted a complaint against BAR and Whittaker Corporation asserting products-liability. BAR

54(b), the appeal is premature because it leaves many issues yet unresolved. The second issue, broadly stated, is whether the arbitration award should have been confirmed, or whether grounds existed for refusing such confirmation. We will consider each of these in turn.

## MOTION TO DISMISS

### I.

As a general rule, an appeal to this Court properly lies only after a final judgment, decree, or order. *Hazzard v. Westview Golf Club, Inc.,* Me., 217 A.2d 217, 222 (1966); *Fidelity & Casualty Co. v. Bodwell Granite Co.,* 102 Me. 148, 152, 66 A. 314, 316 (1906).[5]

Beyond those exceptions enumerated by our Rules, our statutes create

> "numerous exceptions to the final judgment rule, which our Court has long recognized in those instances in which the peculiar character of the question involved hardly admits of postponement, if any benefit is to be derived from it by the aggrieved party." *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.,* Me., 351 A.2d 845, 848 (1976).

Under the present state of our law, therefore, the Court will decline to review a case before it *"unless the appeal is from a 'final judgment,' except when otherwise specifically authorized." Id.* (emphasis supplied).

This Court has found such specifically authorized exceptions in many contexts. *See* cases cited in *Northeast Investment*

*Co., Inc., supra* at 848–49. *See also, Boyle v. Share,* Me., 377 A.2d 458 (1977); *Milstar Mfg. Corp. v. Waterville Urb. Renewal Authority,* Me., 351 A.2d 538 (1976); *cf. Summit Realty, Inc. v. Gipe,* Me., 315 A.2d 428 (1974).

Title 4, § 54 of our statutes expressly allows review of interlocutory orders or rulings by reporting the same to the Law Court when, in the opinion of the presiding Justice, they present questions of law so important as to require review before any further proceedings are had in the action. As we noted in *Northeast Investment,* however, the statute was not designed to provide an exclusive avenue for such appeals, but merely to add to existing exceptions. 351 A.2d at 848.

In 1967, our Legislature adopted the Uniform Arbitration Act, 14 M.R.S.A. § 5927, *et seq.* (hereinafter U.A.A.). The Act provides for application to the Superior Court by a party to a valid arbitration agreement to confirm, deny, modify or vacate an arbitration award. 14 M.R.S.A. § 5937. Section 5945 of the Act provides further that:

> 1. An appeal may be taken from:
>
> .     .     .     .     .
>
> C. An order confirming or denying confirmation of an award;
>
> 2. The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Appellee MEC[6] argues that subsection 2 of this provision implicitly incorpo-

---

filed its application for confirmation of the Arbitration Committee Award by a counterclaim filed in MEC's action against BAR and Whittaker. The order of the Court below passed on *only* the counterclaim of BAR which sought confirmation of the Arbitration Committee's Award. No adjudication has been made as to the *"products-liability claim"* asserted by MEC against BAR and Whittaker. Because of this, MEC has asserted in its motion to dismiss the appeal. Rule 54(b) is a bar to prosecution of the appeal.

**5.** Exceptions to this general rule exist under M.R.Civ.P. Rule 54(b), Rule 72(c), and perhaps in cases of injunction. *See,* Field, McKusick & Wroth, *Maine Civil Practice,* Comments to Rule 73. *See also, Burt Company v. The Burrowes*

*Corp.,* 158 Me. 237, 240, 182 A.2d 481, 483 (1962).

*Cf. Levesque v. State of Maine,* 587 F.2d 78, at 80, No. 78–1351, slip op. at 3 (1st Cir. November 22, 1978) and *Spencer Companies, Inc. v. Armonk Industries, Inc.,* 489 F.2d 704, 706 (1st Cir. 1973) (Exception to federal final judgment rule where temporary restraining order in reality operates as preliminary injunction). *Compare Massachusetts Air Pollution and Noise Statement Committee v. Brinegar,* 499 F.2d 125, 126 (1st Cir. 1974).

**6.** Appellee Whittaker Corporation filed a brief in opposition to the motion to dismiss; on the merits, however, it is in substantial agreement with MEC.

rates the *"final judgment"* policies of this Court, and precludes our consideration of this appeal inasmuch as the denial of confirmation does not constitute a final judgment under *Hazzard, supra,* and similar precedents.

We do not accept that conclusion.

Section 5945(2), as we interpret it, warrants application of constitutional, statutory and prudential rules and policies relative to the appealability of orders or judgments. Among those, as noted above, is our willingness, absent countervailing considerations, to entertain appeals from orders otherwise not sufficiently final where the Legislature has enacted a specific statutory authorization for such an appeal.[7]

The highest courts of Maryland, Nevada, Arizona and Massachusetts, for example, have by *obiter dictum* interpreted the U.A.A. appeals section to create an immediate appeal right, irrespective of the interlocutory nature of the decree. *See Maietta v. Greenfield,* 267 Md. 287, 297 A.2d 244 (1972); *United Association of Journeymen & Apprentices of Plumbing v. Eighth Judicial District Court,* 82 Nev. 103, 412 P.2d 352 (1966); *Roeder v. Huish,* 105 Ariz. 508, 467 P.2d 902 (1970); *School Committee of Agawam v. Agawam Education Association,* Mass., 359 N.E.2d 956, Mass.Adv.Sh. (1977) 227, and cases cited therein at notes 5 and 6.

In *State v. Pearson,* Fla., 154 So.2d 833 (1963), the Court held a confirmation order immediately appealable under the U.A.A., though not a final judgment, despite a Florida statute purporting to restrict appeals to final judgments, subject to only three inapplicable exceptions.

A similar result obtains in this state. The existence of recognized exceptions to the final judgment rule does not preclude the recognition of additional ones, particularly where, unlike Florida, we have no single statute purporting to encompass all such exceptions and where our final judg-

ment rule is judicially rather than legislatively created.

The clarity of language of § 5945(1)(c) cannot be gainsaid. In our view, it evidences a legislative intention to create an exception to the final judgment rule allowing immediate appeal of such interlocutory orders. As discussed *infra,* we find no procedural rule or other impediment which might preclude us from giving full effect to this intention. *See* M.R.Civ.P., Rule 54(b).

## II.

### *COHEN* ISSUE

As stated earlier, one of the exceptions to the final judgment rule which we have recognized was announced by this Court in *Northeast Investment Company, Inc. v. Leisure Living Communities, Inc.,* Me., 351 A.2d 845 (1976), in which we heard an appeal from an order confirming an attachment of real estate.

In *Northeast Investment* we adopted the test of *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) providing for immediate appeal of interlocutory orders within that

> small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. 351 A.2d at 851.

In *Northeast Investment,* however, we were considering the test for review of interlocutory orders in the absence of a statutory grant of appeal. Orders granting or denying attachments were not specifically made appealable by statute, and it was necessary to consider under what circumstances such appeals would be heard. The circumstances here are quite different; the explicit grant of § 5945(1)(c) makes unnec-

---

**7.** Neither 4 M.R.S.A. § 57, governing the jurisdiction of the Law Court, nor Rule 73 of our Rules of Civil Procedure, specifically establishes a *"final judgment Rule,"* per se. Our rule is a prudential one of our own making, and while it will apply in nearly all cases, it is not completely rigid.

essary a consideration of whether the instant order would otherwise be appealable by virtue of the *Cohen* rule adopted in *Northeast Investment.*

### III.

### Rule 54(b) Issue

██ Appellee Maine Central contends that Rule 54(b) of the Maine Rules of Civil Procedure necessitates a dismissal of this appeal.

We disagree.

Rule 54(b), M.R.Civ.P. provides:

*(b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief· is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment, as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

The Superior Court did not make a Rule 54(b) determination of *"no just reason for delay,"* nor did it direct entry of final judgment. Appellant BAR did not request any such finding.

██ We hold that the procedural requirements of Rule 54(b) are inapplicable where there exists, as to the order or judgment sought to be reviewed, a specific statutory exception to the final judgment rule.

██ Rule 54(b) of the Maine Rules of Civil Procedure is identical to Rule 54(b) of the Federal Rules of Civil Procedure. Accordingly, we value constructions and comments on the federal rule as aids in construing our parallel provision.[8]

Professor Moore's treatise on federal practice observes that:

*A Rule 54(b) certificate is required to impart finality to an order that is not otherwise final in the sense that it does not fully and finally determine all claims with respect to all parties. It is not required if appealability does not depend on finality, as is the case when the order is an interlocutory order appealable as of right.*[9] Moore's Federal Practice, Vol. 9 ¶ 110–09 (1975) (Emphasis supplied).

Professors Wright and Miller agree with this analysis, concluding that *"interlocutory orders made appealable by statute do not come within the ambit of Rule 54(b) . . ."* 10 Wright & Miller, *Federal Practice and Procedure,* § 2656 (1973) p. 43.

The authors expand upon this principle in § 2658:

*Rule 54(b) generally does not apply to orders that are not final under Section 1291 of Title 28 but nevertheless are appealable, either as a result of some statutory provision or as a judicially created exception to the final judgment rule. This is in keeping with the general policy . . . that the rules should not be construed to alter federal appellate jurisdiction; they ought not to be interpreted to supercede or modify the other means by which a party can secure a review of a trial court determination.* 10 Wright & Miller, § 2658, pp. 54–55.

---

8. In the federal system, 28 U.S.C. § 1291 establishes a statutory requirement of a *"final decision"* for appellate review, paralleling our own judicially created final judgment rule.

9. Moore continues, *"[n]or is it required if the order is final within the Cohen rule or the Forgay-Conrad rule." Id.* Since we find a spe-

cific statutory exception, it is not necessary to premise our decision on either of these doctrines.

*Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) established an exception to the final judgment rule where a danger of imminent and irretrievable loss to appellant existed.

*See also, Redding & Co. v. Russwine Const. Corp.,* 135 U.S.App.D.C. 153, 158 n. 33, 417 F.2d 721, 726 n. 33 (1969); *Cutting Room Appliances Corp. v. Empire Cutting Mach. Co.,* 186 F.2d 997 (2d Cir. 1951).[10]

In *Pang-Tsu Mow v. Republic of China,* 91 U.S.App.D.C. 324, 201 F.2d 195 (1952), *cert. den.,* 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953) plaintiff Republic sued two of its agents seeking an accounting of funds and a preliminary injunction. The district court granted the injunction, but did not issue a Rule 54(b) certificate. The Court of Appeals nevertheless heard an appeal from the order, basing its jurisdiction on the predecessor of 28 U.S.C. § 1292(a)(1).[11] The Court there observed:

> *This statute explicitly authorizes an appeal from such an interlocutory order, and we do not think a determination and direction under Rule 54(b) is a condition thereto even though the suit involves multiple claims. The Rule is designed to preclude appeal until there is finality. The statutory provision for appeal from an interlocutory order involving an injunction is an exception to the necessity for finality. Reconciliation of the Rule with the statute requires that the former be not construed so as to supplant the exception.* 91 U.S.App.D.C. at 326, 201 F.2d at 197.

*See also,* Note, *"Appealability in the Federal Courts,"* 75 *Harv.L.Rev.* 351, 371 (1961).

It is interesting to note that this view prevails in spite of the fact that the language of Rule 54(b), in both the federal and Maine forms, does not specifically provide for its inapplicability where a right to appeal is provided under statute.

The Supreme Court of North Carolina, in *Oestreicher v. American National Stores, Inc.,* 290 N.C. 118, 225 S.E.2d 797 (1976), considered the North Carolina version of Rule 54(b), which, in contrast to the Federal and Maine rules, added the specific exception that uncertified judgments in a 54(b)

context would not be reviewed *"by appeal or otherwise except as expressly provided by these rules or other statutes."* General Statutes 1A–1, Rule 54(b), cited at 225 S.E.2d 800 (Emphasis added by court). The court found such a statute applicable to the order of the trial court, and thus reversed the Court of Appeals' finding that the order was nonappealable.

The *Oestreicher* court suggested, however, that even under the unadored federal rule an appeal would be allowed. *Citing Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) and *Wright & Miller, supra,* §§ 2653, 2658, they noted that

> *[e]ven though the Federal Rule makes no express provision as ours does "to other statutes," federal courts have interpreted Federal Rule 54(b) as neither superseding nor abrogating any other federal statute controlling appellate jurisdiction.* 225 S.E.2d at 804.

The Maine version of 54(b) likewise does not override the specific provisions of such statute as 14 M.R.S.A. § 5945(1)(c) so as to preclude appeal where authorized by statute even though the subject of the appeal would under ordinary rule be deemed interlocutory.

In so deciding we are endeavoring to act in accordance with what we believe to be the purpose of Rule 54(b). With the modern trend toward more liberal provision for the permissive joinder of parties and claims under both the federal and Maine rules has come the possibility of abuse and hardship. As the Supreme Court has said:

> *The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final*

---

10. *"The review of orders made appealable by statute regardless of finality is not touched by Rule 54(b)."* 186 F.2d at 998.

11. Authorizing appeal of interlocutory orders of the district courts granting, continuing, modifying, refusing or dissolving injunctions, *inter alia.*

*judgment can be had. Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950).

Rule 54(b) is an attempt to alleviate such hardship, yet it is a double-edged sword, for while it allows appeals at the discretion of the trial court in circumstances where it would not otherwise be available, its blanket application could disserve its ends. Thus, for example, if the § 5945 appeal were subject to Rule 54(b), it could be barred by the losing party in the arbitration proceeding joining additional parties or claims to the action for confirmation of the award. If the presiding justice failed to make the necessary determination and entry of judgment under Rule 54(b), the party seeking confirmation would be precluded from either finally receiving it or appealing its denial until all other issues presented had been litigated.

Such a result, we think, would be inconsistent with the public policy in support of the arbitration process as well as the intent of both the Uniform Arbitration Act and M.R.Civ.P. Rule 54(b).

The motion to dismiss the appeal is denied.

### MERITS

The merits of this case are divisible into two principal issues. The first is whether MEC is bound by the award under the terms of the Interchange Agreement, *i. e.,* whether the Arbitration Agreement covers the incident in 1971 which gave rise to the arbitration. If MEC is bound, the second issue is whether the award is enforceable under either the federal or Maine Arbitration Acts.

### IV.

The Interchange Agreement of Association of American Railroads [12] was signed on behalf of MEC on January 19, 1920; on February 24, 1920, BAR also became a signatory. That Agreement, on its face, binds member railroads to

*abide by the Code of Rules Governing . . . the Interchange of Traffic . . and as well [to] abide by each and all interpretations of the Arbitration Committee provided for by said Code of Rules, until this agreement on the part of the subscriber shall be terminated by three months notice in writing.*

Appellee MEC argues that the Agreement, specifically the language cited above, imposes no obligation on the parties to submit controversies to arbitration, but provides only that *if* the parties do voluntarily submit a controversy to arbitration, they will *"abide by"* the Committee's decision.

▆▆▆▆▆ Maine Central correctly notes that parties cannot be compelled to arbitrate or to abide by an *ex parte* award without clear contractual language evidencing an intent to be bound to do so. 6 C.J.S. *Arbitration* § 6. We cannot agree, however, with MEC's construction of the Interchange Rules, which it contends establishes only procedures for voluntary arbitration.

This case is governed by the Interchange Rules in effect in 1971, the year of the accident. Rule 122, entitled *"Settlement of Disputes"*, provides in sections (1) through (8) procedural guides for the submission of a dispute to arbitration. It continues:

*9. Should one of the parties refuse or fail to furnish the necessary information, the Arbitration Committee shall use its judgment as to whether it can properly give its opinion with the information furnished.*

*10. Decisions of the Committee shall be final and binding upon the parties concerned.*

*11. Ex parte cases (where one of the parties refuses to submit to formal arbitration) should contain all pertinent information related thereto, consisting of not more than three typewritten pages, letter size, single spaced.*

*12. Requests for rulings or interpretations on a specific case, where formal arbitration is not desired, should contain all pertinent information related to the*

---

12. The American Railroad Association was the predecessor of the AAR.

*dispute, including copies of associated letters or billing repair cards.*

Appellee [13] contends that these Rules merely provide a *procedure* for implementation of the Agreement, which, again, appellee insists provides simply that if the parties submit to arbitration, they will abide by the decisions of the Committee.

Construction of the Rules is complicated by poor draftsmanship. In particular, they fail to clearly distinguish among the types of remedies they provide, and the effect of each. However, some conclusions are apparent.

■ Rule 122(11), providing for *ex parte* arbitration, is not the equivalent of Rule 122(12), providing for *"requests for rulings or interpretations."* Both provide that submissions *"should contain all pertinent information related [to the dispute],"* which, if redundancy is to be avoided, suggests that they provide for two distinct processes. Therefore, *ex parte* arbitration is not merely a request for a ruling or interpretation.

■ Both 122(11) and 122(12) contain language indicating that neither is *"formal"* arbitration. Appellee suggests that *"formal"* arbitration is that which alone can produce a binding decision.

We disagree.

*Ex parte* arbitration is allowed where formal—*i. e.,* bipartite—arbitration is *refused*; requests for rulings are allowed where formal arbitration is *not desired.* We think the distinction is significant. *Ex parte* arbitration transpires where bipartite arbitration is refused: to say that only bipartite (formal) arbitration can produce a binding award is to say (as appellee does) that binding arbitration is possible only where both parties consent to it in that specific instance. Were that the case, *ex parte* arbitration would produce nothing more than a *"ruling or interpretation"*, no more useful

than that already available under 122(12). Again, a construction producing such a redundancy is to be avoided.

We think that *"formal"* arbitration is bipartite arbitration, but that informal (or perhaps, aformal), *ex parte* arbitration is equally binding.

Appellee seizes upon the fact that 122(10) makes Committee *"decisions"* final and binding, while 122(9) provides that where one party refuses or fails to furnish necessary information the Committee must decide whether it can properly give its *"opinion"* in that case. Thus, it is argued, only *opinions*, and not binding *decisions*, can result from cases—such as *ex parte* arbitration—in which one side has refused to participate.

■ Such a construction reads 122(9) too narrowly. We note, first of all, that 122(1) through 122(8) provide rules for the submission of exhibits in informal arbitration cases. Rule 122(9), following immediately, applies by its terms not only to *ex parte* arbitration, but to instances of formal arbitration where one party fails to furnish sufficient information, while conceding the authority of the Committee to issue a binding award. In such a case, aware of the implications of its decision, the Committee could determine that it could not *"properly give its opinion."* By implication, it would thereby refuse also to render a decision.[14] Where, however, sufficient information has been tendered to allow the proper formulation of an opinion, the Committee may also render a decision, which under 122(10) is final and binding.

■ According to this construction, arbitration awards made under the Rules are binding not when the parties agree that it be so, but when and if the Arbitration Committee concludes that it can *"properly give its opinion"* justifying a *"final and binding"* decision.

---

13. Hereinafter, references to *"appellee"*, unless otherwise designated, refer to the Maine Central Railroad Company. Specific arguments raised solely by the Whittaker Corporation will be designated as such.

14. Although a decision may be announced without an accompanying opinion, a decision cannot be properly reached without information sufficient to formulate an opinion. Conversely, information sufficient to produce an opinion may also justify a decision if the Committee chooses to announce one.

There is a dearth of cases interpreting this Agreement and these Rules. Our research has not disclosed any other than that appearing in the appendix of appellant's brief. We find that of some weight, however.

*Union Tank Car Company v. Delaware and Hudson Railway Company*, Misc. No. 76–0069 (D.C.D.C.1976), like the instant case, involved a derailment in which freight cars owned by Union Tank Car traveling with a train operated by D & H Ry. were destroyed. Both parties were signatories to the AAR Interchange Agreement; after respondent refused to submit to arbitration petitioner proceeded *ex parte* and received an award. Union's petition for confirmation was filed with the United States District Court for the District of Columbia; an order confirming the award was granted on July 30, 1976.[15]

The petition in *Union Tank Car* alleged that arbitration was mandatory in any disputes arising under the Rules, and that an *ex parte* award is binding. The court's order, while stating only that the award was confirmed, apparently accepted these allegations since the obligation to confirm arbitration awards arises only when the court has first determined that a binding contract for arbitration exists. *See Chillum-Adelphi Volunteer Fire Department, Inc. v. Button and Goode, Inc.*, 242 Md. 509, 219 A.2d 801 (1966).[16] Were arbitration not mandatory, or *ex parte* awards unenforceable,[17] the court would have concluded that any contract for arbitration which may have existed did not extend to this situation, and that confirmation was inappropriate. Acting under 9 U.S.C. §§ 1–14, the court affirmed the award.

Appellee urges that *Union Tank Car* is *"of no precedential value"* here inasmuch as there is no evidence that respondent railroad objected to the confirmation petition on the basis of an unenforceable agreement to arbitrate. We do not share that conclusion.

An award based upon an unenforceable arbitration agreement denies the court in which confirmation is sought jurisdiction over the subject matter. *Kaiser-Ducett Corp. v. Housewrights, Inc.*, 48 Ill. App.3d 589, 6 Ill.Dec. 568, 570, 363 N.E.2d 97, 99 (1977). An arbitrator's award, made beyond his jurisdiction, is of no effect. *Continental Materials Corp. v. Gaddis Min. Co.*, 306 F.2d 952 (10th Cir. 1962). The existence of a valid agreement providing for arbitration, and compliance with the contractual specifications relative thereto, is therefore a condition precedent to any judicial action on an arbitration award. *Austin Mailers Union No. 136 v. Newspapers, Inc.*, 226 F.Supp. 600, 603 (W.D.Tex. 1963), aff. 329 F.2d 312 (5th Cir. 1964), cert. den., 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753 (1964).

The issue of a court's jurisdiction remains open and may be addressed at any time. The court may do so *sua sponte*. Nothing in the opinion in *Union Tank Car* indicates the court had any question as to the continuing validity of the underlying agreement.[18]

---

15. The case arose under 9 U.S.C. § 1 *et seq.*, the United States Arbitration Act.

16. *A court does not act in an appellate capacity in reviewing the arbitration award, but enters judgment on what may be considered a contract of the parties, after it has made an independent determination that the contract should be enforced.* 219 A.2d at 806 (emphasis supplied).

17. We are unimpressed by any arguments against the validity of *ex parte* awards *per se.* Such awards were valid at common law, *Sanborn v. Paul*, 60 Me. 325, 327 (1872); *see* cases cited in *International Brotherhood of Teamsters v. Shapiro*, 138 Conn. 57, 82 A.2d 345, 349 (1951). *See also, Ramonas v. Kerelis*, 102 Ill. App.2d 262, 243 N.E.2d 711, 716 (1968).

18. In fact, it is likely that the issue of the validity of the Agreement was raised by respondent railroad. The court's order notes that *"verified pleadings in opposition to said petition to confirm"* were received; 9 U.S.C. § 10(d) provides for vacatur of award where the arbitrators exceeded their powers, apparently the only ground in § 10 open to respondent. A charge that the underlying Agreement does not provide for binding arbitration, of course, encompasses an allegation that the arbitrators exceeded their powers. *See Communication Equipment Workers, Inc. (IND) v.*

We, therefore, hold that the Interchange Agreement and Rules of the AAR imposed a duty upon member railroads to abide by the decisions of the Arbitration Committee, whether formal or informal, bipartite or *ex parte*.

## V.

Appellees next contend that if the Interchange Rules are in fact binding on the member railroads, any award granted thereunder is unenforceable. First, they argue, such agreements to arbitrate future disputes were void as against public policy at the time made, *i. e.*, in 1920.[19] Secondly, no statutory basis exists for confirming such awards, since both the United States and Maine Arbitration Acts are specifically limited to prospective application only,[20] and both Acts post-date the signing of the Interchange Agreement. Further, appellees contend that there is no written contract evidencing the agreement to arbitrate as required by both the federal and Maine Acts.[21]

■ It is well established law that the *"constitution and bylaws of a voluntary unincorporated association . . . constitute a valid enforceable contract between the members and the association . . . ."* *Libby v. Perry*, Me., 311 A.2d 527, 532 (1973). The obligation also runs between each member and the others. 3 *Corbin on Contracts*, § 568 p. 336. Similarly, a *"member of a voluntary association necessarily agrees to the reasonable rules and regulations of the order"*. *Logan v. 3750 North Lake Shore Drive, Inc.*, 17 Ill. App.3d 584, 308 N.E.2d 278, 280–281 (1974). A member cannot object to rules later adopted by the association so long as they have been promulgated in accordance with the association's constitution. *Board of*

*School Com'rs of Mobile County v. Hudgens*, 274 Ala. 647, 151 So.2d 247 (1963).

■ Agreements to arbitrate are within the ambit of such rules and regulations. *See* 5 Am.Jur., *Arbitration & Award*, § 11, n. 10. In *Golden Seed Co. Inc. v. Funk Seeds Internat'l, Inc.*, 21 Ill.App.3d 131, 315 N.E.2d 140 (1940), the court observed:

> It has been held that the provisions of a voluntary association's by-laws which require arbitration of disputes between members constitute a binding agreement on the part of its members to submit disputes to arbitration. 315 N.E.2d at 141.

Appellees then urge that, the Agreement and Rules having been adopted in 1920, the agreement to arbitrate was not *"made subsequent to"* the effective date of the Arbitration Acts, and cannot therefore be confirmed under them.

14 M.R.S.A. § 5946 provides that the Maine Uniform Arbitration Act applies only to *"agreements made subsequent to October 7, 1967."* As noted, the Interchange Agreement was signed by both parties in 1920. BAR contends, however, that the periodic revision of the Interchange Rules by the Association membership bound MEC to the arbitration provisions by virtue of a post-1969 amendment. This position was argued at the hearing below.

Counsel for BAR questioned Norman L. Antle, Director of Rules and Inspection of the Mechanical Division of the AAR, whose responsibilities include coordination of the Arbitration Committee activities.

> Q. Did your railroad[22] vote on changes in 1970, that produced a double pamphlet set of interchange rules?
>
> A. Yes.

---

*Western Electric Co.*, 320 F.Supp. 1277, 1280 (D.C.Md.1970).

**19.** MEC and BAR signed the Interchange Agreement on January 19, 1920 and February 24, 1920 respectively.

**20.** 9 U.S.C. § 14 provides: *"This title shall not apply to contracts made prior to January 1, 1926."*

14 M.R.S.A. § 5946 provides: *"This Chapter applies only to agreements made subsequent to October 7, 1967."*

**21.** *See* 9 U.S.C. § 2, and 14 M.R.S.A. § 5927.

**22.** Antle assumed his position in the AAR January 1, 1972; in 1970 he was employed by Western Railway, a member of the AAR.

Q. *Was that done by letter ballot?*

A. *Yes.*

Q. *Thank you. I believe you have testified, since 1970, to your knowledge the method of approving these changes has not changed; is that correct?*

A. *That's true.*

Q. *And who can cast these written ballots?*

A. *Member roads.*

Q. *Do you know, from your own knowledge, or from looking at the records of the Association of American Railroads, if both Main Central Railroad and Bangor and Aroostook have participated by written ballot?*

A. *Yes, they have.*

Counsel for BAR explained his position for the Court:

MR. MITCHELL: . . . *I will state for the record, the purpose of this, your Honor; I am trying to show, through this witness, a continuing evolution of these interchange rules starting from 1920, and carrying on right into the presence.* (sic)

THE COURT: *What, if I understand what you suggested, is the legal significance of this?*

MR. MITCHELL: *The legal significance is that, <u>although the interchange agreements themselves were signed in 1920,</u> these people became a part of a gradually evolving association with constantly changing <u>interchange rules which themselves formed the written contract between the parties every time they interchange cars,</u> therefore the rules in effect at the time of the derailment; and that it was the arbitration provision of that particular rule at that time which, therefor, had application itself under the Federal Arbitration Act or State Arbitration Act.*

*The argument of Maine Central Railroad is, we had one fixed contract in 1920, the Arbitration Act is not effective. I say, no; this is a constantly changing and renewing contract.*

THE COURT: *Each acceptance by the Association, in your view, is a novation or modification of the arrangement?*

MR. MITCHELL: *Yes. That's correct, your Honor.*

(Emphasis supplied)

MEC then argued—and now argues—that modification of the Rules, even if approved, is still insufficient to meet the demands of the statute restricting it to prospective application. Counsel for MEC noted that:

. . . *[I]n 1920, <u>the document the parties actually signed</u> simply said that the parties will abide by decisions and interpretations of the Arbitration decision provided by the,—And let me say the Rule 122 simply changes the procedure from time to time as to how you go about that, to whom the demand is to be submitted, how many pages long the presentation can be, et. cetera. So I do suggest that the procedural changes in how to do this, from time to time, don't have any effect on the fact that <u>an agreement was signed</u> in 1920.* (Emphasis supplied)

As noted in connection with appellee's motion to dismiss, *supra*, § 5947 of our Act requires that we construe it so *"as to effectuate its general purpose to make uniform the law of those states which enact it."* The two issues treated in the dialogue cited above—the *"evolution"* of the agreement and the necessity of a writing—are treated in *Johnson v. Schuberth*, 40 Ill.App.2d 467, 189 N.E.2d 768 (1963), to which we turn for guidance.

In *Johnson*, defendant realtor had joined the Chicago Real Estate Board prior to the effective date of the Illinois Uniform Arbitration Act, but remained a member of the Board after its effective date. The Board's bylaws provided for the mandatory arbitration of disputes over commissions between members. Plaintiff, also a Board member, submitted his claim to the Board's Arbitration Committee, which rendered an *ex parte* award for plaintiff when defendant refused to appear. In an action by plaintiff to enforce the award, defendant answered that, having joined the Board at a time when such an award would have been unenforceable, he was not now bound by virtue of the new Act. The Court disagreed:

*It appears to be defendant's contention that the date of the agreement to arbitrate would be the date he joined the Chicago Real Estate Board which is prior to the effective date of the new act and therefore the latter act is inapplicable against him. We cannot agree.*

*.    .    .    .    .*

*Rather, we believe that each day defendant remained a member of the Chicago Real Estate Board is to be considered as an agreement to adhere to the by-laws of the organization. Thus, when the matter was submitted to arbitration on August 28, 1961, there existed a post August 24, 1961, agreement to arbitrate.* 189 N.E.2d at 772.

■ We think that such a conclusion is the necessary product of *Libby v. Perry, supra.* We cannot accept the claim, implicit in appellee MEC's argument, that the Interchange Rules provide for binding arbitration as to any members joining the Association after the effective date of our Arbitration Act, but provide only a mechanism for voluntary submission to arbitration as to members which have joined prior to that date. The very purpose of an association and of arbitration belies such a finding. The far more compelling inference is that, when cars are interchanged among members, they are transferred with the assurance that any disputes which might arise will be settled according to the Rules, with all members standing on an equal footing.

■ We find that the *"agreement"* required by our Arbitration Act is found in the acceptance of the Rules by continued membership in the AAR, and that such agreement has in this case been entered into subsequent to the effective date of the Act.

■ Appellee appears to argue [23] that since only the 1920 Agreement was signed, it alone can qualify under the Act, and that it fails for having been executed prior to 1967, the effective date of our Uniform Act. This claim is patently erroneous.

The Maine Arbitration Act requires that there be a *"written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties,"* 14 M.R.S.A. § 5927. The federal provision is substantially identical, 9 U.S.C. § 2; it has been interpreted not to require a signed agreement—*AAACon Auto Transport, Inc. v. Teafatiller,* 334 F.Supp. 1042, 1043 (S.D.N.Y.1971). We cannot believe that the Maine Arbitration Act is amenable to a contrary construction.

The Interchange Rules constitute a *"written contract"* among the member railroads of the AAR; Rule 122 constitutes a *"provision in a written contract to submit to arbitration any controversy thereafter arising between the parties."* Such agreement having been developed by vote of the Association subsequent to 1967, it is enforceable in accordance with the Maine Arbitration Act.

### VI.

■ We find no other issues meriting serious discussion. Appellee Whittaker Corporation contends that the arbitration award is incapable of confirmation, inasmuch as the award is ambiguous and incomplete.

In its decision of March 29, 1972, the AAR Arbitration Committee determined that *"the Maine Central Railroad Company is responsible [for the damaged BAR cars] as per Rule 95, Section B.1.a.(6) in the Field Manual."* Although this award lacks the precision of that granted in, *e. g.,* the *Union Tank Car* case, in which a specific sum was awarded, we do not agree that it is incapable of confirmation. There was evidence in the record that, responsibility having been assigned, the computation of damages is merely a ministerial act to be carried out according to a detailed formula provided by Rule 107 of the Interchange Rules. The award will not fail on this ground. *See State v. Pearson,* Fla., 154 So.2d 833 (1963).

---

**23.** *See* quoted portion of transcript, *supra,* p. 28.

■ Whittaker likewise joins Maine Central in urging that the award be vacated because the arbitrators exceeded the powers granted them under the term of the Interchange Agreement, inasmuch as neither that Agreement nor the Interchange Rules encompass questions of manufacturers' and designers' liability. If true, such would constitute a ground for vacating the award under both the common law of Maine, *Coffin v. Hall,* 106 Me. 126, 75 A. 385 (1909) and the federal and Maine Arbitration Acts, 9 U.S.C. § 10 and 14 M.R.S.A. § 5938(1)(c).

We do not agree that in rendering their decision the arbitrators purported to resolve the issues of products liability presented by Maine Central's suit in the Superior Court. Rather, they did nothing more than give their authoritative opinion that initial responsibility for the damaged cars lay with Maine Central, by virtue of clear language in the Interchange Rules placing responsibility upon the recipient railroad. Maine Central is entitled to pursue its legal remedies with respect to the alleged products liability claim; that such was not considered by the arbitrators does not, however, eviscerate the correctness of their award.

■ A claim that the arbitrator acted in excess of the authority conferred by the agreement is always open for judicial review. *M. S. Kelliher Co. v. Town of Wakefield,* 346 Mass. 645, 195 N.E.2d 330 (1964). It was open to Maine Central to appear at arbitration and urge that no decision be rendered; that the issues involved extended beyond the focus of the Rules and the expertise of the Committee. They declined to do so. In *International Brotherhood of Teamsters v. Shapiro, supra,* quoting from Sturges, *Commercial Arbitration & Awards,* p. 449, is was stated:

> [I]f a party contests the jurisdiction of the arbitrators, and withdraws; or, if he never appears for that reason; he may be caught in this situation: he may lose in his defense to the proceedings to enforce the award or in his direct proceedings to vacate the award; the jurisdiction of the arbitrators may be sustained against his objection. In such case, he will not have been heard, and will have no further opportunity to be heard, upon the merits of his case.

Here, appellees may continue their present litigation; we believe, however, that the challenges to the arbitrators' award are unpersuasive.

## VII.

■ 14 M.R.S.A. § 5937 requires confirmation of an arbitration award upon application of a party, unless grounds are urged for vacating, modifying or correcting the award, as provided in §§ 5938 and 5939. The language of the statute is mandatory. Little is left for the court to judge. "[U]nless . . . *the facts show that he [the arbitrator] acted fraudulently, or beyond the scope of the issues submitted to him for decision, or that the proceedings lacked procedural fairness . . .", Chillum-Adelphi Volunteer Fire Department, Inc., supra,* 219 A.2d at 806, the Court must hold the parties to their bargain and confirm the award.

■ Our review convinces us that the arbitration here was fairly conducted, free from fraud, and decided within the limits of the issues submitted, and that the award should therefore have been confirmed. *Chillum-Adelphi Volunteer Fire Department, Inc., supra; Doherty v. School Committee of Boston,* 363 Mass. 885, 297 N.E.2d 494 (1973).

Therefore, the motion to dismiss is denied; the Order of the Court below is vacated, and the cause remanded to the Superior Court with instructions to enter an Order confirming the arbitrators' award.

Appeal sustained.

Order below vacated.

Remanded with instructions to enter an Order confirming the Arbitration Committee Award.

McKUSICK, C. J., and DELAHANTY, J., did not sit.